Labor and Industry Department, Appellant, *v.*
Unemployment Compensation Board of Review.

Argued October 24, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadt-feld, Parker and Rhodes, JJ.

*Hiram J. Bloom,* Special Deputy Attorney General, with him *Guy K. Bard,* Attorney General, for appellant.

*Clair Groover,* Special Deputy Attorney General, for appellee.

Per Curiam, December 20, 1938:

These appeals are by the Secretary of Labor and Industry of the Commonwealth, acting for the Department of Labor and Industry, of which he is the head, from final decisions of the Unemployment Compensation Board of Review established by the 'Unemployment Compensation Law' approved December 5, 1936, (P. L. of 1937, p. 2897) and its amendment of May 18, 1937, P. L. 658.

Claims for unemployment compensation under said act were filed by Elbert Elmer Bush (Appeal No. 14) and John Priest (Appeal No. 15) respectively, with the Department of Labor and Industry which determined, after examination of the claims filed and on the basis of the facts set forth therein, that the claims for com-

pensation were not valid and the claimants were ineligible for compensation, because their unemployment was due to their having voluntarily left work and was not the result of any condition requiring them to join or remain a member of a company union or to resign from or refrain from joining any bona fide labor organization or to accept wages, hours or conditions of employment not desired by a majority of the employes in their establishments or occupations, or denying them the right of collective bargaining under generally prevailing conditions (section 402 (b) of said Act).

Appeals were taken by the respective claimants from the decisions of the department holding them ineligible for unemployment compensation, which were heard before the same referee, who reversed the decisions of the department and allowed the respective claimants unemployment compensation. The department thereupon appealed to the board of review (See section 303 of the general regulations promulgated as rules of procedure by the Unemployment Compensation Board of Review pursuant to the Act, which makes the claimant and the department parties to all appeal proceedings). The board of review, on consideration of the appeals, affirmed the respective awards of the referee, and these appeals were duly taken to this court by the department after the decisions of the board had become final (section 510).

The Act provides (section 510), that, "In any appeal to the Superior Court, the findings of the board or referee, as the case may be, as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and in such cases the jurisdiction of the court shall be confined to questions of law." The facts are not in dispute and fraud is not involved. Hence our jurisdiction is confined to questions of law. But the meaning of the phrase, 'Voluntarily leaving work,' (section 402 (b)), which the act declares shall render a claimant ineligible for compensation, and whether it

applies to the undisputed facts in these cases, are questions of law and within the jurisdiction of this court.

The word, 'voluntarily', may be used in a number of different senses, but, in our opinion, having regard to the purpose and intent of the act, considered as a whole, but with special reference to its declaration of public policy (section 3) and its fourth article, which prescribes the qualifications required to secure compensation and enumerates the causes which will make an employe ineligible for compensation, the most appropriate meaning or definition is, "Of one's own motion" (Century Dictionary); "of one's own accord" (Oxford Dictionary); "acting of one's self" (Webster's New International Dictionary). When we say, "He left work voluntarily," we commonly mean, he left of his own motion; he was not discharged. It is the opposite of a discharge, dismissal or lay-off by the employer or other action by the employer severing relations with his employes, to provide against which the act was mainly designed.

This meaning of the term is easily applied, is of general significance and obviates the necessity of an inquiry or examination into the mental processes of the employe which led up to or brought about his resignation or quitting work of his own motion, the result of which might or might not be deemed voluntary as considered by different persons, from different points of view, and thus be variable and subject to no uniform standard.

We are satisfied that the act does not apply to a severance from work caused by an accident to the employe; and that it is not a health insurance measure. The suggestion now being made in congressional circles that the Social Security Act, with which our Unemployment Compensation Act is closely connected, shall be enlarged so as to provide compensation for unemployment resulting from sickness is a potent reason for concluding that it is not now included within present legislation.

We are of opinion, therefore, that, subject to the special exception stated in section 402 (b) relative to labor organizations, etc., where the employe, without action by the employer, resigns, leaves or quits his employment, his action amounts to 'voluntarily leaving work,' such as to render him ineligible for unemployment compensation under the act.

We shall now apply these general principles to the particular cases being reviewed.

### No. 14 March Term, 1939—The Bush case.

The undisputed evidence in this case is that Mr. Bush was not discharged, dismissed or laid off by his employer. He was employed, and had been for approximately three years and ten months prior to November 26, 1937, to deliver milk on a milk route by Model Dairy Company of Corry, Pa. He quit work because his physician advised him to give up his position on account of a rheumatic condition. He was experiencing pains in his feet and legs, which were aggravated or increased by being on his feet so much in the early morning and jumping in and out of the wagon in all kinds of weather, storms, snow and rain, and by lack of sleep.

The referee found that "claimant's employment was terminated November 26, 1937 for the reason that claimant was physically unable to continue the said employment," and drew the conclusion of law that "claimant was unemployed because he was discharged and did not voluntarily leave work within the meaning of the act."

The board, on appeal, recognized that the claimant had left his employment with the Model Dairy Company "because of the condition of his health which made it impossible for him to continue in this employment" and on this ground approved the referee's finding of fact above mentioned; but it modified the referee's conclusion of law as above stated by substituting therefor the following: "The unemployment of the claimant is not due to voluntarily leaving work within the meaning

of the provisions of section 402 of the Unemployment Compensation Law."

In discussing the matter, the board said: "The contention of the Division [that claimant was ineligible for compensation because his leaving in the circumstances abovementioned amounted to 'voluntarily leaving work'] is based upon paragraph (b) of this Section [402]. To sustain the contention of the Division, it is necessary to find that the unemployment of the claimant is due to his voluntarily leaving work. To be voluntary, his act of leaving his work must have been free from compulsion, and free from the influence of any extraneous, disturbing cause. A voluntary act is the antithesis of an act done under compulsion, coercion, constraint or objective necessity. The presence of any physical force, compelling the claimant to leave his work would render his act involuntary and outside of the provisions of the Act relied upon by the Division. The requirements of the claimant's employment combined with his physical condition compelled him to quit his work. There is no more compelling motive for human action than the preservation of physical wellbeing. The conditions compelling the claimant to leave his work were not solely subjective. The necessity of the claimant being on his feet, so much jumping in and out of the delivery wagon, and the exposure to all kinds of weather were objective factors incident to his employment making it necessary for him to terminate his employment. We conclude therefore that the claimant did not voluntarily leave his work and therefore his unemployment is not due to voluntarily leaving work."

For the reasons stated under our general discussion of the subject, we cannot adopt this view. The claimant gave up his employment. He quit of his own motion or accord. He was not discharged, dismissed or laid off by his employer. To explore the reasons or mental processes which led the claimant to give up his employment is not within the province of the board. It would re-

sult in too variable and uncertain results. The act is designed to protect the employe against a discharge, dismissal or lay-off by the employer, through no fault or action of the employe—except as provided in clause (b) of section 402. Few actions are taken in this world without some extraneous constraining or compulsive force or influence and to apply such an uncertain basis to "voluntarily leaving work," would be doing violence to the usual and ordinary meaning of the term in the light of the purpose of the enactment.

The decision in this case is reversed.

No. 15 March Term, 1939—The Priest case.

In this case the claimant was employed by the General Electric Company at Erie from March 1, 1937 to December 20, 1937. On December 17, 1937 he received from his employer the following written notice:

"Because of reduction in schedule it is necessary to reduce the number of employees in our department, and as your service is only from 7-28-37, you are the first to be notified that you will be laid off on Fri. 12-24-37. I am sorry that this is necessary but it is something over which I have no control.

"(Signed) W. F. Schryver."

Two days later, hearing of a job which might be obtained with the Baldwin Locomotive Works at Philadelphia, he called to see his superior, who had notified him that his services would be dispensed with on December 24, 1937 and notified him that there was a possibility of his finding work out of town and that he thought he would leave immediately and see if he could not find work in Philadelphia, where he had friends and chances of getting another job. To this his superior said, "All right."

He left on December 20, 1937 for Philadelphia, but found no work there, although he stayed until January 16, 1938, when he came back to Erie.

The notice of dismissal, effective December 24, 1937, was never withdrawn or modified.

The referee concluded that claimant had been discharged by the General Electric Co. on December 20, 1937 and awarded compensation accordingly. On appeal, the board sustained the referee except as to the date of his discharge, saying: "In the present case, the claimant was notified by his employer that he would be laid off on December 24. He displayed commendable zeal in endeavoring to secure new employment at once. He went to Philadelphia for the exclusive purpose of endeavoring to obtain a job with the Baldwin Locomotive Works. His leaving work under the circumstances did not cause the unemployment for which he claimed benefits. Under any circumstances his employment with the General Electric Company would have ceased on December 24, 1937. At most, his leaving work on December 20 caused his unemployment between December 20 and December 24 only. His unemployment after December 24 was due to his being laid off by the General Electric Company ...... The decision of the Referee is affirmed."

We are in general accord with the board in its decision. In our view of the case the claimant's employment was broken or severed as a result of the act of the employer in notifying him that he would be laid off on December 24, seven days later. His leaving was due to this positive act of the employer, which was never withdrawn or modified. His leaving a few days in advance of the time fixed for his lay-off, with the employer's full assent, cannot be construed as 'voluntarily leaving work,' but only as anticipating by a few days, with the consent of the employer, the effective date of his dismissal. He did not leave the work of his own motion or accord, but in consequence of the action of the employer laying him off. His dismissal became effective as of December 24, 1937 and with this modification the decision is affirmed.

No. 14 March Term, 1939—Decision reversed.

526

No. 15 March Term, 1939—Decision modified and affirmed.