BERRY, WHITSON & BERRY, APPELLANT, v. DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, AND BOARD OF REVIEW, RESPONDENTS.

Argued January 30, 1956—Decided February 20, 1956.

*Mr. Henry H. Wiley* argued the cause for appellant (*Messrs. Berry, Whitson & Berry,* attorneys).

*Mr. Clarence F. McGovern* argued the cause for respondent.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.  This appeal was certified here of our own motion while pending in the Appellate Division.

The husband of Mrs. Glynis S. Dexter, serving in the United States Navy, was stationed at the Lakehurst Naval Air Station.  Mrs. Dexter, aged 22, lived with him at Lakehurst and worked for appellant at Toms River, several miles away, traveling to and from work in the couple's car.  She quit her job and went to her parents' home in Maine when her husband was transferred to Kansas for eight weeks' schooling there.  She diligently, but unsuccessfully, sought new employment in Maine, and then filed a claim for unemployment compensation benefits.

The issue for decision is whether Mrs. Dexter "left work voluntarily without good cause" so as to be disqualified for benefits, as provided by *R. S.* 43:21–5(*a*).

The Board of Review determined that "The claimant left her work in New Jersey voluntarily but with good cause. No disqualification exists."

The test of "good cause" is found in our opinion in *Krauss v. A. & M. Karagheusian, Inc.,* 13 *N. J.* 447, 464–465 (1953), where we said:

"What is 'good cause' must reflect the underlying purpose of the act to relieve against the distress of involuntary unemployment. The seeming paradox of allowing benefits to an individual whose

unemployment is of his own volition disappears when the context of the words is viewed in that light. The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for the purposes of the act. In statutory contemplation he cannot then reasonably be judged as free to stay at the job. Unlike the statutes of some states, the New Jersey act does not require that good cause' be 'connected with the work' or 'attributable to the work.' Therefore, 'good cause' may also lie in extraneous factors exerting compulsive pressure upon the claimant and causing him to quit. The test is well stated in *Bliley Electric Co. v. Unemployment Compensation Board of Review* [158 *Pa. Super.* 548], 45 *A. 2d* [898] 903:

'* * * The mere fact that a worker wills and intends to leave a job does not necessarily and always mean that the leaving is voluntary. Extraneous factors, the surrounding circumstances, must be taken into the account, and when they are examined it may be found that the seemingly voluntary, the apparently intentional, act was in fact involuntary. A worker's physical and mental condition, his personal and family problems, the authoritative demand of legal duties—these are circumstances that exert pressure upon him and imperiously call for decision and action.

'When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment.' "

Mrs. Dexter's parents live in the vicinity of Brunswick, Maine, where there is also a Naval Air Station. When appellant hired Mrs. Dexter it was admittedly with the knowledge that she "would stay with us as long as her husband stayed down in this area," but would leave if he was transferred elsewhere. She had been employed for a year when Mr. Dexter was transferred to Kansas for the training course. The couple did not then know where he would be next assigned, but "supposed" it might be to the Air Station at Brunswick, Maine. (He was in fact assigned to a station in Maryland, where Mrs. Dexter subsequently joined him.)

The couple's decision that Mrs. Dexter go to her parents' home "to wait for him" was not, however, based upon any actual expectation that Mr. Dexter would be assigned to duty at Brunswick. The Board of Review found that she "could not * * * remain in New Jersey nor could she afford to join her husband [in Kansas] because he would not receive family maintenance while undergoing the additional training." These findings were made upon Mrs. Dexter's testimony that it "would have been impossible for me to stay there [in Lakehurst] alone. Lakehurst is a Navy town and I never would attempt to live there by myself." "My husband took the car with him to Kansas," and bus service between Lakehurst and Toms River was "very inconvenient" in relation to her starting and quitting times at appellant's office. And, she said, her husband "was only going out there for eight weeks and when they go out temporarily like that the Navy will not pay for dependents to travel and so the only thing I could do was to come home here with my folks where it wouldn't cost me to live, actually, and to wait for him."

The Board of Review's determination imports the judgment that the circumstances establish a case of the kind "when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so," so that "the termination of his employment is involuntary for the purposes of the act." *Krauss v. A. & M. Karagheusian, Inc., supra.*

The statutory scheme commits the determination of these questions in the first instance to the agency and its administrative appeal tribunals. The test of judicial review is not whether we would come to the same conclusion if the original determination was ours to make, but rather whether the fact-finder could reasonably conclude upon the proofs that the claimant's decision to quit was in good faith compelled by considerations which, though personal, were substantial and real and not trivial or frivolous. Under that test it has not been demonstrated that the determination of the Board of Review should be set aside. The repugnance of a young married woman of 22, without the means to join

her husband, against facing the problems of living alone in a "Navy town" and depending for transportation to her work upon a bus scheduled to run at inconvenient hours, could reasonably be viewed as having exerted compulsive pressure causing her to quit her employment to go to her parents' home and seek new employment in that area pending completion of her husband's schooling and his re-assignment. See *Western Printing & Lithographing Co. v. Industrial Commission*, 260 *Wis.* 124, 50 *N. W. 2d* 410 (*Sup. Ct.* 1951); *Hollingsworth Tool Works v. Review Board, etc.*, 119 *Ind. App.* 191, 84 *N. E. 2d* 895 (*App. Ct.* 1949); *Mees' Bakery v. Unemployment Compensation Board of Review*, 162 *Pa. Super.* 183, 56 *A. 2d* 386 (*Super. Ct.* 1948); *Harrison, Eligibility and Disqualification for Benefits*, 55 *Yale L. J.* 117 (1945); *Kempfer, Disqualifications for Voluntarily Leaving and Misconduct*, 55 *Yale L. J.* 147, 154 (1945).

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice HEHER—1.