KENNETH E. RAFFETY, appellee, v. IOWA EMPLOYMENT SECURITY COMMISSION and HYDE-VREDENBURG COMPANY, appellants.

No. 48922.

(Reported in 76 N.W.2d 787)

MAY 9, 1956.

Don G. Allen and N. C. Quiett, both of Des Moines, for appellants.

Albert V. Hass, of Chariton, for appellee.

OLIVER, J.—Appellee, Raffety, was a warehouseman in the employ of appellant Hyde-Vredenburg Company, at Chariton. About July 1, 1953, he suffered an injury to his back, caused by the breaking of the floor in a freight car he was unloading, and he was temporarily disabled. Appellant employer sent him to a doctor. He was under the doctor's care and unable to work until about August 25. His liver had been affected and he had contracted yellow jaundice which the doctor attributed to his injury. When he had somewhat recovered the doctor advised him his regular work, which required, among other things, the handling of 100-pound bags of potatoes, would be too heavy for him and told the employer appellee could return to work if given light work until his strength returned. Appellee talked with the employer's foreman, who did not offer any lighter work, so appellee told him he "was going somewhere to see * * *."

August 25 appellee went to Newton where he was offered a lighter job. He testified it was a much better job, better pay and the work was much lighter and not injurious to his health, and that he quit his work with appellant employer after he secured

this job. Appellant employer had paid his wages for the first week after he was disabled. Other payments made were $8 compensation for temporary disability under the workmen's compensation law and most of his medical expenses. Appellee worked at the Newton job from August 26, 1953, to February 19, 1954, when he was laid off because of lack of work. Thereafter he made claim for unemployment compensation based largely upon wage credits accrued prior to the time he was injured.

In the administrative processes the claim was denied by the claims deputy, the referee (appeal tribunal) and Iowa Employment Security Commission. Thereupon claimant commenced action in district court for a judicial review of the decision of the commission. The district court reversed the decision and adjudged and ordered that claimant be allowed benefits. From this judgment the commission and Hyde-Vredenburg Company have appealed to this court.

Code of Iowa 1954, section 96.5, recites in part:

"An individual shall be disqualified for benefits:

"1. Voluntary quitting. If he has left his work voluntarily without good cause attributable to his employer, if so found by the commission. But he shall not be disqualified if the commission finds that:

"*a.* He left his employment in good faith for the sole purpose of accepting better employment, which he did accept, and that he remained continuously in said new employment for not less than twelve weeks."

Appellee's injury arose out of and in the course of his employment and his disability was attributable to such *employment*. However, appellants contend his quitting was not attributable to his *employer*, which is the language of the statute. They argue the work was not inherently dangerous, the accident was not reasonably foreseeable or preventable and the employer was not, in any manner, at fault. This argument is beside the point. The good cause attributable to the employer need not be based upon a fault or wrong of such employer. An injury suffered by an employee, under the circumstances shown here, properly may be said to be attributable to the employer under whose direction the employee was working. It may also be said to be attributable

to the employment itself. The two phrases, at times, have been used interchangeably by the courts. See Wolf's v. Iowa Employment Security Commission, 244 Iowa 999, 59 N.W.2d 216; Moulton v. Iowa Employment Security Commission, 239 Iowa 1161, 34 N.W.2d 211.

The Wolf's case held the employee was disqualified for benefits for leaving her work and moving to a drier climate because of a sinus infection not directly connected with her employment. In the Moulton case the quitting because of pregnancy was held voluntary. Neither case is here in point but both discuss decisions and the varying language of statutes of other jurisdictions. Among these is Fannon v. Federal Cartridge Corp., 219 Minn. 306, 307, 312, 18 N.W.2d 249, 250, 252, 158 A. L. R. 389, 392, 394, in which the language of the Minnesota statute, " 'voluntarily and without good cause attributable to the employer * * *' ", is practically the same as that in Code section 96.5(1).

In the Fannon case the woman employee was allergic to gunpowder and became ill while working in an ammunition factory. She told her foreman her doctor ordered her not to work there again and she was granted a release. She would have been physically unable to resume her heavy job then or thereafter. Later she secured other employment for about four months and was then laid off because of material shortage.

In holding her credits for earnings in the ammunition factory should not be canceled, the court stated the termination of her employment because its continuance would endanger her health was involuntary, and also: "the separation of employment here was for 'good cause attributable to the employer.' By this we do not imply any wrongful act, negligence, or failure on the part of the employer here in supplying reasonable and safe working conditions. As we construe the law, the legislature did not intend that some wrongful act or negligence be first established by a claimant before termination of his employment on account of sickness or disease directly connected therewith could be said to be for 'good cause attributable to the employer.' Rather, we feel the legislature intended that, where factors or circumstances directly connected with employment result in illness or disease to an employe and make it impossible for him to continue therein

because of serious danger to his health, termination of employment for this reason may correctly be said to be involuntary and for 'good cause attributable to the employer,' even though the employer be free from all negligence or wrongdoing in connection therewith."

So, in the case at bar, appellee's quitting work for appellant employer, after he had recovered from the injury received in such work, sufficiently to be able to do lighter work, was not voluntary within the meaning of subsection 1 of Code section 96.5. Nor was it without good cause attributable to his employer.

Furthermore, subdivision *a*, of subsection 1 of Code section 96.5 provides the employee shall not be disqualified for benefits if: "He left his employment in good faith for the sole purpose of accepting better employment" in which he worked continuously for twelve weeks.

The record shows appellee sought lighter work with his employer, which the latter was unable to furnish and that thereafter he secured this "better employment" which was lighter work at better pay, gave up his job with appellant employer, at which he had not worked since he was injured, and worked continuously at the new job for about six months. It is clear appellee was within the letter and spirit of the exception provided by subdivision *a*, supra.

We hold the judgment of the trial court was correct.—Affirmed.

All Justices concur.