In the Matter of the Claim of SHELIA SHAW, Respondent. GENERAL MUTUAL INSURANCE COMPANY, Appellant; ISADOR LUBIN, as Industrial Commissioner, Respondent.

Third Department, July 31, 1958.

*Paul F. Donohue* for appellant.

*Louis J. Lefkowitz, Attorney-General,* for Industrial Commissioner, respondent.

*Robert L. Harder* for claimant-respondent.

BERGAN, J. P.  Claimant was employed in the office of the appellant insurance company in Albany, and on July 13, 1956 she quit her job to get married.  Shortly after her marriage she began to look for work again and ultimately found work and became re-employed.

The main problem presented by this case is whether in leaving her job with appellant to get married there was a " voluntary separation " from employment for " good cause ", within section 593 of the Unemployment Insurance Law (Labor Law).

If leaving one's job to get married is " good cause " within the scope of the statute, claimant is deemed to be disqualified from receiving any benefits or from serving any part of the waiting period prescribed in the statute only until there has been " a bona-fide return to the labor market " and " renewed availability for employment " (§ 593, subd. 1, par. [a]).

If, as contended by the appellant insurance company, leaving employment to get married is not leaving for " good cause " a period of " forty-two consecutive calendar days " must elapse after the employee's return to the labor market before such employee will be available for benefits or be credited with waiting period time (§ 593, subd. 1, par. [c]).

The Unemployment Insurance Appeal Board has held that leaving her job to get married was leaving for good cause and that therefore the 42-day disqualification set up in paragraph

(c) of subdivision 1 does not apply; that the claimant temporarily withdrew from the labor market for a short time after her marriage; and that when she returned to the labor market in good faith she was entitled to benefits under the law. We are of opinion this determination is supported by the substantial evidence in this record; that it is a reasonable interpretation of the effect of the statute, and that it ought to be affirmed.

It is important to keep in mind that the effect of whether claimant quit her job for "good cause" is whether a penalty shall or shall not be imposed on her. There can be no doubt in this case that she intended to return to the labor market because she actually did return to it, actively looked for work, and found and took a job after she was married.

This is not a case of a woman attempting to collect unemployment benefits because she gets married and stops working entirely for that reason; nor is it a case of attempting to collect benefits for the period when she is being married, or on a wedding trip, or while she is setting up housekeeping. The benefits sought, and those which have been allowed began, and only began, after the claimant had been settled in her marriage domicile, and after she had re-entered the labor market, had registered for employment, and was attempting to obtain employment, an effort in which she was ultimately successful.

She was then in the situation, and the board found her to be in the situation, of any other employee out of work and seeking employment. She was paid benefits under a public insurance program, in which the board found that her being out of work was excusable.

Had claimant's husband lived in or near Albany, there would have been no problem. When, shortly after she had completed setting up her home she was ready to work, the job she left would no doubt have been available to her. But her husband lives in North Tonawanda and there is where he established the marital domicile; and if claimant wanted to live with him, that is where she had to live. Hence she could not return to her old job but had to look for a new one; and hence the importance of the question whether in leaving the job to get married she left "for good cause".

The statute does not define what is meant by "good cause". Usually it would be expected to be some cause connected with the employment itself: unsatisfactory hours or wages, strain of the work, transportation or other related difficulties.

But it is manifest when the statute is read in context that leaving employment "for good cause" may exist because of conditions which do not have direct bearing on the work itself.

The "separation" from employment may be a temporary "bona-fide withdrawal * * * from the labor market" (§ 593, subd. 1, par. [a]). An employee's getting out of the labor market temporarily would ordinarily imply some personal reason, apart from the internal problems of the work itself. He might be ill; he might have illness in his family which demanded his help; he might want to continue his education; he might inherit enough money so as not be required to work for a while. It is reasonable to think that any of these reasons, and others, might constitute a temporary withdrawal from the labor market in good faith.

If he leaves his employment "for good cause" and with intent to withdraw in good faith from the labor market temporarily, the disabilities cease when he returns to the labor market (subd. 1, par. [b] read with par. [a]).

Thus, leaving employment for good cause may be integrated with a temporary withdrawal from the labor market; and while they may not be fully coextensive, not every bona fide temporary withdrawal from the labor market would be "good cause" for leaving employment (having enough money not to need to work, for example), it would seem that "good cause" ought to be read as a cause having some reasonable foundation.

We think marriage ought to be treated as such a cause as well as illness or other events of important personal consequence to the worker. This is especially so where it is manifest that the woman who is married intends to return to the labor market.

The bride of the Victorian era would no doubt regard her marriage as a permanent withdrawal from the labor market, if, indeed, she had ever been in it; but the economics of modern marriage require that many married women work and they intend to remain and do remain in the labor market after marriage.

There are decisions the other way in some States, and there are some State statutes which would literally exclude the claimant in these circumstances, for example, Ohio, New Hampshire and Nebraska. (Cf. *Moore* v. *Bureau of Unemployment Compensation*, 73 Ohio App. 362; *Nashua Corp.* v. *Brown*, 99 N. H. 205; *Woodmen of World Life Ins. Soc.* v. *Olsen*, 141 Neb. 776). Under statutory language somewhat similar to ours the decision has gone the other way in *Illinois Bell Tel. Co.* v. *Board of Review* (413 Ill. 37).

But in Pennsylvania and New Jersey, at least, the construction of similar statutory language seems more liberal and is in harmony with the decision of the appeal board here. (*Sturdevant Unemployment Compensation Case*, 158 Pa. Superior Ct.

548; *Berry, Whitson & Berry* v. *Division of Employment Security,* 21 N. J. 73). We think that under the New York statute, and under the facts of this case, the board could determine, as it has, that the temporary withdrawal from the labor market by claimant was accomplished by a separation from employment "for good cause".

The board was right also in its decision on the other question raised by appellant that claimant did not accept work as soon as it was offered her after she had returned to the labor market for which she was qualified by training and experience. In this part of the appeal the insurance company contends that some of its employees had told claimant they would be able to get her a job in Buffalo. There is no evidence in the record of any actual offer of such a job, and the board could find that there was no offer, but mere general discussion, certainly not binding on the appellant's employees to find the job or on the claimant to take one if found. Further the board was right in holding that in any event, since she lived in North Tonawanda and not in Buffalo she was not required to have accepted such a job in Buffalo and commuted to it, if offered, even though she had commuted to her job in Albany.

She was justified in seeking work in North Tonawanda where she lived and where she found work ultimately. She was also justified, or at least it is in the realm of arguable fact-finding in which decision has gone in favor of the claimant, in refusing one offer in North Tonawanda before she took her ultimate job there, because she felt she was not qualified. We certainly are unable to ride through the finding in her favor on this aspect of the case to hold as a matter of law that she was qualified and had to take that job.

The determination should be affirmed, with costs to the claimant against the appellant.

HERLIHY, J. (dissenting). I dissent and vote to reverse that part of the majority opinion that found claimant resigned her position for "good cause". Leaving employment to marry is certainly good cause, personal, to the one involved but it is not such as contemplated by the statute.

GIBSON and REYNOLDS, JJ., concur with BERGAN, J. P.; HERLIHY, J., dissents in memorandum.

Determination affirmed, with cost to the claimant against the appellant.