Sarah W. TOOTHAKER

v.

MAINE EMPLOYMENT SECURITY COM-
MISSION and Fairchild Semi-
conductor Division.

Supreme Judicial Court of Maine.

Feb. 15, 1966.

G. Curtis Webber, Auburn, for plaintiff.

Milton L. Bradford, Asst. Atty. Gen., Augusta, for defendants.

Before WILLIAMSON, C. J., and TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

WILLIAMSON, Chief Justice.

This appeal from a decree of the Superior Court sustaining the decision of the Maine Employment Security Commission disqualifying the appellant claimant from benefits under the Employment Security Law is denied. R.S.1954, c. 29 (now 26 M.R.S.A. § 1041 et seq.)

The case requires: (1) the interpretation of the disqualification for benefits provision for leaving work "voluntarily without good cause attributable to such employment" under R.S.1954, c. 29, § 15, subd. I,[1] and (2) the application of the statute to the fact that disability induced by travel caused the claimant to leave her regular employment.

In his decree the presiding Justice said:

"That the findings of fact of the Appeal Tribunal, adopted by the majority of the Commission are supported by the evidence.

"That the decision of the majority of the commission that the Claimant left her regular employment voluntarily without good cause attributable to such employment within the meaning of Section 15–I of the Employment Security Law and that her separation was voluntary without good cause attributable to the employer, within the meaning of Section 17–III of the Law, are supported by the evidence and are correct interpretations and applications of the law."

The decision of the Appeal Tribunal reads in part:

"The claimant, a married woman 31 years old, was last employed as a cookie packer. She worked for this employer about one week, and was obliged to leave this work because the constant standing was too much for her. She previously worked in an electronics

---

1. "Sec. 15. *Disqualification for benefits.* —An individual shall be disqualified for benefits:
I. *Voluntarily leaves work.* For the period of unemployment subsequent to his having retired, or having left his regular employment voluntarily without good cause attributable to such employment, or with respect to a female claimant who has voluntarily left work to marry, or to perform the customary duties of a housewife, or to leave the locale to live with her husband, or to a claimant who has voluntarily removed himself from the labor market where presently employed to an area where employment opportunity

is less frequent, if so found by the commission, and disqualification shall continue until claimant has earned 15 times his weekly benefit amount. In no event shall disqualification for voluntarily leaving regular employment be avoided by periods of other employment unless such other employment shall have continued for 4 full weeks; (1955, c. 376, § 1. 1957, c. 345. 1959, c. 341. 1961, c. 361, § 4)" (now 26 M.R.S.A. § 1193, subd. 1). By amendment in 1965 the period of disqualification was changed and a provision for illness and disability added. P.L.1965, c. 381, § 13.

plant for about six weeks until May 10, 1963, when she separated.

"Occupationally classified as an assembler (electronics), the claimant filed an initial claim for benefits effective May 19, 1963, her weekly benefit amount $31.00.

"The claimant stated that her primary reason for leaving the electronics plant was the travel involved. She used her own car one week, and then travelled with a friend the following week. It involved travel of from 80 to 90 miles a day, and it became too much for her physically. She has a weak back as the result of a fall some time ago. The claimant was receiving $1.30 an hour, and she felt that the travel involved and the pay received were not worthwhile."

*   *   *   *   *   *

"Most of the claimant's past experience has been in an electronics factory, which was her regular employment. The work as a cookie packer she had never done before."

*   *   *   *   *   *

"The claimant accepted the work in the electronics plant, being fully aware of all the conditions of employment. The reason for separation was primarily due to travel and was not attributable to the work. While the claimant may have had good personal cause, the law is specific in that the direct cause of the claimant's leaving must be shown to be attributable to the employment in order that the disqualification not be assessed."

Nothing hinges in the case upon the week's employment as a cookie packer.

■ The Commission's findings of fact are supported by credible evidence and hence are conclusive. R.S. c. 26, § 16–IX (now 26 M.R.S.A. § 1194, subd. 9). Lowell v. Maine Employment Security Comm. et al., 159 Me. 177, 190 A.2d 271; Du Bois et al. v. Maine Employment Security Comm., 150 Me. 494, 114 A.2d 359.

■ The purpose of the Employment Security Law is to provide insurance against unemployment. The plan is not designed to provide health or accident insurance. The claimant for benefits must be both eligible and qualified.

■ Eligibility rests in part on attachment to the labor market evidenced by wages earned in a base period and by ability to and availability for work. Disqualifications for benefits under Section 15, in addition to voluntarily leaving work, briefly stated, include discharge for misconduct, refusal to accept suitable work, stoppage of work arising under certain conditions because of a labor dispute, receipt of certain types of remuneration, fraud in application for and acceptance of benefits, and discharge for conviction of crime. See Krauss v. A. & M. Karagheusian, Inc., 13 N.J. 447, 100 A.2d 277, 281.

The claimant urges in substance that disqualification under Section 15, subd. I was error on two grounds: first, that the separation was involuntary and hence not covered by the statute, and second, that if the separation was voluntary, it was with good cause attributable to the employment. The argument runs that on an involuntary termination, the "good cause" provision is inapplicable and the inquiry need go no further.

■ In our opinion the involuntary character of the separation must be found within "good cause." In short, a separation by act of the employer, for example, by discharge or layoff is involuntary, and by will of the employee is voluntary. The voluntary quit compelled by good cause as defined in the Act is, however, not a cause for disqualification.

The New Jersey Court in Krauss v. A. & M. Karagheusian, Inc., supra, a retirement case, in an opinion drawn by Justice Brennan, now a Justice of the Supreme

Court of the United States, persuasively stated the proper test at p. 286:

"What is 'good cause' must reflect the underlying purpose of the act to relieve against the distress of involuntary unemployment. The seeming paradox of allowing benefits to an individual whose unemployment is of his own volition disappears when the context of the words is viewed in that light. The Legislature contemplated that when an individual voluntarily leaves a job under the pressure of circumstances which may reasonably be viewed as having compelled him to do so, the termination of his employment is involuntary for the purposes of the act. In statutory contemplation he cannot then reasonably be judged as free to stay at the job. Unlike the statutes of some states, the New Jersey act does not require that 'good cause' be 'connected with the work' or 'attributable to the work.' Therefore, 'good cause' may also lie in extraneous factors exerting compulsive pressure upon the claimant and causing him to quit. The test is well stated in Bliley Elec. Co. v. Unemployment Comp. Bd. of Review, [158 Pa.Super. 548] (45 A.2d 898, 903 . .)"

\* \* \* \* \* \*

" 'When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what

is ostensibly voluntary unemployment into involuntary unemployment.' "

In Berry, Whitson & Berry v. Division of Employ. Sec., etc., 21 N.J. 73, 120 A.2d 742, the New Jersey Court, in applying the Krauss test, held a wife who quit her job and went to her parents' home in Maine on transfer of her husband from a New Jersey naval air station to Kansas, left her work "voluntarily but with good cause" and hence was not disqualified. See also Department of Labor, etc. v. Unemployment C. Bd. of R., 133 Pa.Super. 518, 3 A.2d 211, 214; Moulton v. Iowa Employment Security Commission, 239 Iowa 1161, 34 N.W.2d 211; Wolf's v. Iowa Employment Security Commission, 244 Iowa 999, 59 N.W.2d 216.

The contrary view was expressed by three Justices in Lyons v. Appeal Board of Michigan Employ. Sec. Com'n, 363 Mich. 201, 108 N.W.2d 849. An employee laid off in Detroit travelled 273 miles from home to take a job which he shortly left. Three justices held the quit was involuntary, without consideration of "voluntarily without good cause attributable to his employer." Three justices were of the view the quit was voluntary, applying the "good cause" provision, and the seventh held the question of fact had been decided adversely to the employee by the Commission. See contra, Kilgore v. Industrial Commission, 337 S.W.2d 91, 90 A.L.R.2d 825 (Mo.Ct.App.).

In Fannon v. Federal Cartridge Corporation, 219 Minn. 306, 18 N.W.2d 249, 158 A.L.R. 389 (1945), an employee whose health was seriously endangered by her work with gun powder in an ordnance plant left her job. The Court held under a "voluntarily and with good cause attributable to the employer" statute that the termination of employment was both involuntary and "for good cause attributable to the employer." In 18 N.W.2d at p. 252, 158 A.L.R. at p. 394 the Court said:

"We cannot escape the conclusion that where, as here, an employee is im-

pelled because of sickness and disease to terminate employment because continuance thereof would endanger his health and personal welfare, such termination is an involuntary rather than a voluntary act on the part of the employe within the meaning of § 4337–27(A)."

\* \* \* \* \* \*

"Rather, we feel the legislature intended that, where factors or circumstances directly connected with employment result in illness or disease to an employe and make it impossible for him to continue therein because of serious danger to his health, termination of employment for this reason may correctly be said to be involuntary and for 'good cause attributable to the employer,' even though the employer be free from all negligence or wrongdoing in connection therewith."

We are aware of differing interpretations in the administration of our Act. From the original Act of 1936 to 1955 the disqualification provision read "voluntarily without good cause," as we find in *Krauss* and *Berry,* supra. P.L.1935, c. 192, § 5(a). In 1955 the words "attributable to such employment" were added to R.S. c. 29, § 15, subd. I by P.L.1955, c. 376, § 1. The Appeals Tribunal of our Commission in 1956, in finding a claimant was forced to quit due to an arthritic condition said, "Where it is the Tribunal's finding that the leaving was involuntary, it is not necessary to determine whether the cause was attributable to the employment or not." Decision No. 56–A–901, December 17, 1956. The Legislature in 1957 added a provision that "A separation shall not be considered to be voluntary without good cause when it was caused by the illness or disability of the claimant" who took reasonable precautions to protect his employment status. P.L.1957, c. 345. The above provision was stricken from the statute in P.L.1961, c. 361, § 4.

The Commission thereupon ruled that in light of the 1961 amendment, illness or disability must be "unquestionably job connected." On March 22, 1963, the Attorney General in an opinion to the Governor reasoned that, "Emphasis must be on the word 'voluntarily' before consideration of the words 'without good cause attributable to such employment,'" and said, "that the present section 15, subsection I, does not make it mandatory upon the commission to disqualify an employee for benefits who has left his employment due to illness or disability not associated with his employment." (Report of the Attorney General 1963–64, p. 40.)

In 1964 both branches of the Legislature passed an Order that the Attorney General's Opinion to the Governor "reflects the intent of the Legislature on this section." (Legislative Record January 17, 1964, pp. 271, 291.) In 1965 the Legislature restored in substance the 1957 illness and disability provision. P.L.1965, c. 381, § 13.

With the utmost respect for the Legislature, we are of the opinion that the recital of legislative intent as expressed by Order in 1964, while entitled to consideration as an expression of legislative opinion of course is not conclusive upon the judicial branch of government in ascertaining the intention of prior Legislatures in the enactment and amendment of the given statute.

We conclude that the termination of employment by the claimant was voluntary within the meaning of the Act. On the second point the Commission was satisfied that the claimant had "good cause," that is to say, good *personal* cause to quit. The question remains, however, whether the disability induced by the daily travel to and from work was "attributable to such employment."

As we have seen, the words "attributable to such employment" were added to the phrase "voluntarily without good cause."

The "good cause" standing alone included acceptable personal causes, without regard for the connection, if any, between the cause and the employment. See Berry, Whitson & Berry v. Division of Employ. Sec., etc. (N.J.) supra; Raytheon Company v. Director of Division of Emp. Sec., 344 Mass. 369, 182 N.E.2d 293; Blilay Electric Co. v. Unemployment Comp. Bd. of Review (Pa.Super.), supra. But see Morrell & Co. v. Unemployment Compensation Comm., 69 S.D. 618, 13 N.W.2d 498, in which "good cause" was held limited to a cause connected with the work, and Pike v. Adams, 99 N.H. 221, 108 A.2d 55, in which a like result was based on a Commission regulation.

■ "Attributable to such employment" plainly limits the breadth of "good cause." See Raytheon Company v. Director of Division of Emp. Sec., supra, in which the Massachusetts Court took note of the increased scope of "good cause" with the removal of the requirement of connection between cause and work.

The good personal cause for quitting employment in our opinion must be directly attributable to the employment. Fannon v. Federal Cartridge Corporation (Minn.), supra; Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629; Raffety v. Iowa Employment Security Commission, 247 Iowa 896, 76 N.W.2d 787; Bussmann Mfg. Co. v. Industrial Com'n of Missouri (Mo.App.) 327 S.W.2d 487.

"There was no evidence that her illness was due to her employment when she quit on July 19, 1946, or that her absence from her work thereafter, in so far as her illness was concerned, was in any way connected with her employer or her employment." Rivers v. Director of Div. of Emp. Security et al., 323 Mass. 339, 82 N.E.2d 1.

■ The claimant cites Shaw v. Lubin, 6 A.D.2d 354, 177 N.Y.S.2d 1, in which the Court in holding leaving employment to get married was "for good cause" said, at p. 3:

"The statute does not define what is meant by 'good cause'. Usually it would be expected to be some cause connected with the employment itself: unsatisfactory hours or wages, strain of the work, transportation or other related difficulties."

See Annot. 14 A.L.R.2d 1313, 1318. In the instant case there is no lack of transportation but a disability induced by travel required between home and plant. There is no evidence whatsoever of a direct connection between the disability and the services of the claimant in her employment. It is not sufficient that the cause be indirectly connected with the employment.

The suggestion is made that if the employment is not suitable under Sec. 15, subd. III, A [2] relating to refusal to work, then the voluntary quit is therefore for good cause attributable to the employment. In other words, if the job would not be suitable, assuming it were offered to him, he may leave without disqualification under Sec. 15, subd. I.

■ Insofar as the factors in determining suitability have direct connection with the work, they may properly be considered in finding disqualification. Distance of the available work from the claimant's residence, however, is not in this sense "attributable to such employment." Distance is rather a personal rea-

2. "Sec. 15, subd. III, par. A
A. In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earn-

ings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence." (Now 26 M.R.S.A. § 1193, subd. 3, par. A.)

son which may render the work unsuitable apart from any conditions of employment.

In Consiglio v. Administrator, Unemployment Comp. Act, 137 Conn. 693, 81 A. 2d 351, the Court upheld the decision that the claimant left work for a better paying job "without sufficient cause connected with his employment." There was nothing to lead to a conclusion "that the * * * work was unsuitable because of the amount of remuneration or for any other reason." The Court stated the rule in these words, at p. 353:

> "Her contention is, first, that a cause for leaving is sufficient and connected with her employment if that employment is not suitable, and, second, that under the definition of suitable as contained in the act her employment with the Echlin company was not suitable. The first part of her claim is valid. The act does not contemplate that an employee must remain upon a job which is unsuitable to the extent, for instance, that it endangers his health. If he leaves a job which is really unsuitable, his leaving is not voluntary. If the cause of his leaving is the unsuitability of the job, that cause is one which the administrator might reasonably find is sufficient and one which is connected with the employment."

The cause in *Consiglio*, it will be noted, was unquestionably *connected with the employment*. The issue was sufficiency of the cause. In our case the issue is not whether the cause was good, but whether it was attributable to the work.

In Louisiana an employee hired by a foreman on promise he could ride to and from work with the foreman, was held to have left his job with good cause connected with his work when he quit on foreman's discharge. Haskett v. Brown, 165 So. 2d 25 (La.Ct.App.) The case turned on the creation by the employer of the condition of lack of travel facilities under the circumstances. Such is not the instant case. The conditions of employment did not touch on the claimant's travel.

In reaching our conclusion we are mindful "that statutes such as our Maine Employment Security Law are remedial and must be liberally construed for the purpose of accomplishing their objectives * * *." Stewart v. Maine Employment Security Comm., 152 Me. 114, 120, 125 A.2d 83, 86. Our function is limited to determination of what is the law. We must take care that we do not alter or change the policy of the law in the process of construction.

The legislative history of Sec. 15, subd. I plainly shows a stiffening of disqualification from 1936 to 1961. We have seen that the "good cause," i. e., good personal cause of 1936 was limited by "attributable to such employment" in 1955. At the same time the other stated causes of disqualification were added, except retirement in 1961. The illness and disability of 1957 was repealed in 1961 and reenacted in 1965. The penalty for disqualification became heavier in the same period as shown by the statutes below [3] until in 1961

---

**3.** P.L.1935, c. 192, § 5(a) reads:
"For the week in which he has left work voluntarily without good cause, if so found by the commission, and for not less than the 1 nor more than the 5 weeks which immediately follow such week (in addition to the waiting period), as determined by the commission according to the circumstances in each case; * * *."
P.L.1939, c. 110—the following amendment was added to the 1935 law above:

" * * * and his maximum benefit amount shall be reduced by an amount equivalent to the number of such weeks of disqualification times his weekly benefit amount; ."
P.L.1955, c. 376, § 1—not less than 7 nor more than 14 weeks.
P.L.1959, c. 341—not less than 5 nor more than 14 weeks.
P.L.1961, c. 361, § 4—see Sec. 15, subd. I in note 1.

the basis for computation was completely changed.

In summary, we find no indication of intention by the Legislature to lessen the force of "voluntarily without good cause attributable to such employment." By changes in the law reduction in penalty benefits the worker, but does not bear on the definition of disqualification.

For additional illustrative material see Kempfer, Voluntary Leaving and Misconduct, 55 Yale L.J. 147–154; Sanders, Disqualification for Unemployment Insurance, 8 Vand.L.Rev. 307, 317, 320; 81 C.J.S. Social Security and Public Welfare § 167, at p. 255.

With the application of the correct rule of law to the facts found by the Commission, we find no error in the decision below.

The entry will be

Appeal denied.

WEBBER, J., did not sit.

DUFRESNE, Justice (concurring).

I concur in the result. I fully agree with the majority's interpretation of R.S.1954, c. 29, § 15, subd. I, in so far as it rules that the involuntary character of the separation must be found within "good cause", and that the employer's discharge or layoff of an employee is the common-type *involuntary* separation contemplated by the Act.

I maintain however that disability induced by travel comes within the statutory good cause attributable to the employment, and that a voluntary quit under such circumstances should not disqualify the employee for benefits. *Mere separation by the employee induced by travel without proof of factual disability to do the job does not meet the statutory prerequisites of employment attributability.*

Disability, as defined by Webster, means—state of being disabled—deprivation or want of ability—absence of competent physical * * * power, means, fitness * * *.

Distance or travel is not usually a cause attributable to employment but rather is a personal inconvenience incidental to one's employment arising from one's choice of residence. In the instant case, the employee entered into the employment contract with knowledge of the necessary travel incidental to the employment, but so did the employer.

Distance or travel however, may, as a matter of fact and medical science, when superimposed upon the physical stresses of the employment, conjointly endanger the health of the employee and reduce the physical power, ability and fitness of the employee to do the job to such an extent that the particular job has become unsuitable and beyond the physical capacity of the employee. In other words, medical proof could probably show that the travel to and from the place of employment, together with the physical exertions of the job, make it unsuitable as a danger to the health of the employee if the employee continued in the same work, in the same way that bending or standing jobs become unsuitable because of physical degeneration.

From the record, in the instant case, no finding of disability appears, and the reason for separation is said to have been primarily due to travel and not attributable to the work. True, the claimant had claimed before the appeal referee, that the daily travel had become too much for her physically and she introduced a medical certificate to the effect that due to a previous back injury, driving 100 miles a day to work would be too strenuous.

The lower tribunal, as the fact finder, could find with support in the evidence, that the separation was no in way con-

P.L.1965, c. 381, § 13—changed to 12 weeks following week in which claimant left work or until he has earned 8 times

his weekly benefit amount, whichever occurs first.

nected with the work but was primarily induced by the travel involved, and without a specific finding of disability to do the work, because of the travel, the findings only mean that the separation was due to personal reasons unconnected with the employment, to wit, primarily to travel, and thus must stand. For these reasons, I agree with the conclusion of the court that the appeal must be denied.