STATE OF MAINE
PENOBSCOT, ss.

FILED & ENTERED
SUPERIOR COURT

MAY 20 2002

PENOBSCOT COUNTY

SUPERIOR COURT
CIVIL ACTION DOCKET NO.
AP-01-31
AMM -PEN-5/00

DONALD L. GARBRECHT
LAW LIBRARY

AUG 20 2

JMC CORPORATION,
   Petitioner  )
         )
v.         )
         )
MAINE UNEMPLOYMENT )
INSURANCE COMMISSION, )
and RICHARD TOZIER,  )
   Respondents  )

**ORDER AND DECISION ON
PETITIONER'S 80C APPEAL**

The matter is before the court on an appeal by the petitioner, JMC Corporation ("JMC"), pursuant to M.R. Civ. P. 80C. For the following reasons, the court affirms the decision of the Unemployment Insurance Commission (the "Commission").

## BACKGROUND

Richard Tozier ("Tozier") worked for JMC as a truck driver/common laborer/ assistant general manager. He was married to JMC's assistant vice president, Michelle Tozier ("Michelle"). At the time Tozier left JMC, Tozier and Michelle were in the midst of a divorce.

On Saturday, March 24, 2001, Tozier was arrested for operating a vehicle under the influence of alcohol, and faced a suspension of his driver's license. On Monday, March 26, 2001, James Carson ("Carson"), president of JMC and Michelle's father, told Tozier that although he was not terminated, because he was being trained as a truck driver and had this OUI charge, Carson had to find duties other than truck driving for Tozier. Carson told Tozier to "stay in touch."

Although at the initial hearing Tozier testified that he did not call Carson after the March 26th meeting until April 3rd (when Tozier's mother, Susan Bartlett, called and found out that Tozier had been fired because he was causing too much stress at work), telephone records show that Tozier telephoned JMC's offices, Michelle's home, or Carson himself numerous times between March 26th and April 7th. Carson, however, contends that he did not hear from Tozier at all until April 10th, at which time Tozier wanted to know when and why he had been discharged. Carson told him "you didn't show up here at the job. You still had a job here. But I didn't hear from you for two and one half weeks and that was it."

The JMC Corporation Employee Handbook includes two provisions that pertain to employee absences:

Provision 2.21, Unapproved Absences/Job Abandonment:

All absences from your work must be approved by your Team Leader or acting Team Leader unless otherwise allowed in the leave and time-off policies in the Handbook. Unless absence is due to an emergency, you must obtain approval for an absent (including vacation and personal holidays) prior to the absence.

Understand that an unapproved absence will result in discipline up to and including termination. *An unapproved absence of three (3) consecutive days is job abandonment and is voluntary termination.*

Provision 2.19, Tardiness and Absences:

Excessive tardiness will result in your suspension from employment, and if not corrected, it will result in your termination. Tardiness of fifteen (15) minutes or more, three (3) times in a period of four (4) consecutive weeks, may result in termination.

If you are absent from work because of an emergency, notify your Team Leader or Acting Team Leader before 8:00a.m. the first day of the absence. You are expected to notify the Assistant Vice President in writing on the day you return to work. *Understanding that an absence of three (3) consecutive days without notifying your Team Leader or Acting Team Leader is job abandonment and is voluntary termination.*

(Emphasis added).

Jerry Williamson of the Department of Labor Bureau of Employment Security conducted a hearing on this matter and issued a decision dated April 25, 2001. In his decision, Williamson found that Tozier's "discharge appears to be more related to his personal relationship with the employer's daughter, than with specific misconduct on the job. Misconduct is not evident." Williamson then awarded Tozier benefits from April 1, 2001, and notified JMC that its "Experience Rating Record will be charged because separation was not for misconduct in connection with the employment."

JMC appealed the decision to the Department of Labor Division of Administrative Hearings. After a telephonic hearing, Hearing Officer Michael Smith issued a decision dated May 23, 2001 and found that "the believable evidence from the employer was that the employer did not discharge [Tozier] due to the impending divorce from his daughter." Smith stated:

For [Tozier] to let two weeks go by before contacting the employer was

unreasonable. *If [Tozier] had contacted the employer sooner, there would not have been a separation from work.* [Tozier] would still have a job with the employer. By this conduct [Tozier] intended, or should have reasonably foreseen, that the conduct would still result in a breach of [Tozier's] duties or obligations to the employer.

(Emphasis added). Smith then set aside Williamson's decision, and found that Tozier was disqualified from benefits.

On May 24, 2001, Tozier appealed Smith's decision to the Unemployment Insurance Commission. After a hearing, John Wlodkowski of the Commission issued his decision on July 20, 2001, in which he found that Tozier "was discharged from employment and did not voluntarily leave his employment." Wlodkowski stated:

> In this case, [Tozier] did not freely make an affirmative choice to leave his job. Rather, he wanted to continue working, but was unable to do so after [Carson] failed to return his telephone calls to inform him as to whether he had been assigned to a different position.
> Having found that [Tozier] was discharged, the second issue is whether [Tozier] was discharged for misconduct connected with his work within the meaning of 26 M.R.S.A. §§ 1043 (23) and 1193 (2).
> ***
> [T]he Commission finds that the employer did not meet its burden of proving that the claimant engaged in misconduct. [Tozier] did not act unreasonably under the totality of the circumstances, and his conduct was not tantamount to a substantial and intentional disregard of the employer's interests.
> ***
> For the above reasons, the Commission finds that [Tozier] was discharged, but not for misconduct connected with his work or in connection with his employment, within the meaning of 26 M.R.S.A. §§ 1043 (23), 1193 (2) and 1221 (3).

JMC appealed Wlodkowski's decision to the Superior Court, asking the court to reverse the decision, arguing it was based on an error of law.

## DISCUSSION

"[A]ny person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court . . . ." 5 M.R.S.A. § 11001 (1). The court may:

A. Affirm the decision of the agency;
B. Remand the case for further proceedings, findings of fact or conclusions of law or direct the agency to hold such proceedings or take such action as the court deems necessary; or
C. Reverse or modify the decision if the administrative findings, inferences, conclusions or decisions are:

(1) In violation of consitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by bias or error of law;
(5) Unsupported by substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S.A. § 11007 (4). "Judicial review shall be confined to the record upon which the agency decision was based . . . ." 5 M.R.S.A. § 11006 (1). "The court shall not substitute its judgment for that of the agency on questions of fact." 5 M.R.S.A. § 11007 (3). "The standard of review is limited to whether the governmental agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." Seider v. Board of Examiners of Psychologists, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (Me. 2000) (quotation and citation omitted). "The burden of proof rests with the party seeking to overturn the agency's decision." Id. at ¶ 9.

Under the "Employment Security Law," "[a]n unemployed individual shall be eligible to receive benefits," 26 M.R.S.A. § 1192, unless, inter alia, he voluntarily leaves work without good cause attributable to that employment, or is discharged for misconduct connected with his work. 26 M.R.S.A. § 1193 (1) and (2).

**1. Voluntarily Leaves Work without Good Cause**

The Commission found that Tozier was discharged and did not voluntarily leave his employment pursuant to 26 M.R.S.A. § 1193 (1). "Within the context of 26 M.R.S.A. § 1193 (1)(A), a claimant leaves employment 'voluntarily' only when he freely makes an affirmative choice to do so." Smart v. Maine Unemployment Ins. Com'n, 1997 ME 31, ¶ 7, 690 A.2d 972, 974. "[A] separation by act of the employer, for example, by discharge or layoff is involuntary, and by will of the employee is voluntary." Toothaker v. Maine Employment Security Com'n, 217 A.2d 203, 206 (Me. 1966). The Commission found that:

> After their meeting on March 26, 2001, the employer told [Tozier] to keep in touch to see whether the employer found a different position for him. [Tozier] credibly testified that he called the employer numerous times after their meeting up until April 3, 2001, to see whether there was any work for him. [Tozier] was unable to reach the employer directly, but left messages with the receptionist to have the employer call him back. [Tozier] also left messages with [Michelle] . . . . [Michelle] knew [Tozier] was staying at his mother's house and knew the telephone number at which he could be reached. [Tozier's] calls were never

4

returned. The employer testified that it never received any messages from its vice-president/daughter or any other employee asking that it return [Tozier's] calls. [Tozier's] mother testified that she saw [Tozier] call his employer several times and left messages asking the employer to return his call. Furthermore, [Tozier's] mother's telephone records support [Tozier's] testimony that he tried to call his employer on numerous occasions. The telephone records show that [26] calls were made to the employer between March 26, 2001 and April 3, 2001, when [Tozier's] mother was finally informed that [Tozier] had been terminated.

The employer also testified that it did not know how to contact [Tozier] to inform him that there was a different position available for him. This testimony, however, is rebutted by the employer's own statement that it knew its vice-president/daughter was in contact with [Tozier]; therefore, it could have asked her for the telephone number where [Tozier] could be reached. In this case, [Tozier] did not freely make an affirmative choice to leave his job. Rather, he wanted to continue working, but was unable to do so after the employer failed to return his telephone calls to inform him as to whether he had been assigned a different position. Thus, the Commission finds that [Tozier] did not end his employment voluntarily, but rather was discharged.

This court holds that the Commission did not make an error in the law in concluding that Tozier did not leave JMC voluntarily. The court must defer to the Commission on credibility issues and findings of fact, and the facts, as the Commission found them, support the notion that Tozier did not make an affirmative choice to leave his employment. The record shows that Tozier made a concerted effort to "stay in touch" with his employer in order to work. He took active steps to keep his job.[1] The Commission's decision is, therefore, upheld on this basis.

### 2. Discharge for Misconduct

"'Misconduct' means a culpable breach of the employee's duties or obligations to the employer or a pattern of irresponsible behavior, which in either case manifests a disregard for a material interest of the employer." 26 M.R.S.A. § 1043 (23) (Supp. 2001). The employer bears the burden of proving that the employee it terminated engaged in misconduct. Sprague Electric Company v. Maine Unemployment Insurance Com'n, 536 A.2d 618, 619 (Me. 1988).

---

1. Smith's decision, which found that Tozier had left his employment voluntarily, specifically said that if Tozier had contacted JMC sooner, there would have been no separation from work. The court notes that it was at that hearing that Tozier testified that he did not call JMC before April. In truth, however, telephone records demonstrate that he did attempt to call JMC numerous times. With that, it is questionable whether Smith's decision would remain as it was.

5

The Commission held that the "culpability" language in both the previous[2] and amended definitions of "misconduct" provides that a claimant must have been at fault in breaching his or her obligations, but does not require his or her subjective intent to do so. See Wellby Super Drug Stores, Inc. v. Maine Unemployment Ins. Com'n, 603 A.2d 476, 478 (Me. 1992) (it is not an essential element of "misconduct" that employee have intent). The Commission then held that "[b]ecause the definitions of misconduct are consistent regarding the claimant's culpability," it would rely on the Law Court's prior guidance on this issue. Thus,

> the Commission examines the employee's behavior as the *objective* manifestation of intent. It is not an essential of misconduct, as defined in the statute, that the employee have actual subjective intent to disregard the employer's interests. It is sufficient if the Commission justifiably determines that the employee's conduct was of a type, degree or frequency that was so violative of employer interests that it may reasonably be deemed tantamount to an intentional disregard of those interests.

Sheink v. Maine Department of Manpower Affairs, 423 A.2d 519, 522 (Me. 1980) (emphasis original). See Forbes-Lilley v. Unemployment Ins. Com'n, 643 A.2d 377, 379 (Me. 1994). The Commission's interpretation of the law was not in error. In its decision, the Commission held that:

> the employer did not meet its burden of proving that [Tozier] engaged in misconduct. [Tozier] did not act unreasonably under the totality of the circumstances, and his conduct was not tantamount to a substantial and intentional disregard of the employer's interests.
> After [Tozier] had been charged with OUI, the employer told [Tozier] to keep in touch to see if it had a different position available for [Tozier] now that he would no longer be trained as a truck driver. [Tozier] credibly testified that, pursuant to the employer's instructions, he called the employer on several occasions to see if there was any work for hiim. Because [Tozier] was unable to reach the employer, he left messages for the employer to call him back.

---

2. The original definition of "misconduct" stated:

[C]onduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has a right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer.

26 M.R.S.A. § 1043 (23) (1988).

However, the employer never returned [Tozier's] calls. [Tozier's] mother's telephone records support this testimony. The telephone records show that [26] calls were placed between the meeting on March 26, 2001, and April 3, 2001, when the employer told [Tozier's] mother he was terminated. Thus, there was no job abandonment as alleged by the employer. Instead, it appears that the employer discharged [Tozier] because of the stressful situation created by the impending divorce between him and employer's vice-president/daughter. The Commission finds credible [Tozier's] mother's testimony that the employer discharged [Tozier] because of the stress associated with the divorce and the effects it had on the workplace. Such a reason for discharge does not rise to the level of misconduct.

The situation in this case does not fall under the definition of "misconduct." Tozier did not breach his duties to his employer, he followed his employer's instructions. His employer required him to "stay in touch" so that he could be assigned duties other than driving a truck. For countless days, Tozier called and left messages for his employer. It was the employer, not Tozier, who did not make the effort to take, or return, the phone calls.

JMC also argues that Tozier's failure to follow the handbook was good cause for his termination. An employee's violation of an employer's rule is not misconduct *per se* within the meaning of the statute. See Moore v. Maine Department of Manpower Affairs, 388 A.2d 516, 519 (Me. 1978). "[T]he Commission may not treat the fact that the employee has violated an employer's rule . . . as sufficient, without more, to establish statutory misconduct." Sheink, 423 A.2d at 522. Likewise, the statutory definition of "misconduct" relates only to "an employee's entitlement to benefits and does not preclude an employer from discharging an employee for actions that are not included in this definition of misconduct." 26 M.R.S.A. § 1043 (23). The Commission is therefore required to evaluate the employee's conduct under the statutory objective standard. The Commission did so, and correctly found that Tozier did not engage in "misconduct," as defined by the statute.

7

THE ENTRY IS:

The Unemployment Insurance Commission's decision is affirmed.

The Clerk is directed to incorporate this order into the docket by reference

_____
Justice, Superior Court

DATED: May 17 , 2002