## (March 13, 1980)

In the Matter of the Claim of RICHARD R. NONNON, Respondent. PHILIP Ross, as Industrial Commissioner, Appellant.—Appeal from a decision of the Unemployment Insurance Appeal Board, filed September 1, 1978, which determined that claimant was entitled to unemployment insurance benefits. Claimant was a 19-year-old, part-time student who began a four-month course to become an "emergency medical technician" in February of 1978. The course was given on Monday and Wednesday evenings each week at Albert Einstein Hospital in The Bronx and, according to claimant's testimony, the class hours were "from 6 to 11 o'clock, the latest." On March 1, 1978, claimant took a position with a maintenance company and was assigned to work at Madison Square Garden from 5:00 A.M. to 1:00 P.M. Thereafter, on March 12, 1978, he was told that his hours would be altered and he would be required to work from midnight to 8:00 a.m. Claiming that these new hours would conflict with his pre-existing class schedule, claimant quit on March 26, 1978 when the employer refused to continue his original hours. In an initial determination which was sustained by the Administrative Law Judge, the Industrial Commissioner found claimant disqualified from receiving benefits because he had voluntarily left his employment without good cause. The board, however, reversed this determination and held that claimant had good cause to refuse the change in his hours since the employer's action was unilateral and a substantial change in the terms and conditions of his employment. This appeal by the Industrial Commissioner ensued. It has often been held that an employee's preference for particular hours of employment, in the absence of truly compelling circumstances, does not constitute good cause for leaving employment *(Matter of Imre [Catherwood],* 27 AD2d 970; *Matter of Weiss [Catherwood],* 26 AD2d 851; *Matter of Sybell [Catherwood],* 14 AD2d 981). Where, as here, the change in hours is reasonably required by the employer's business, the only question remaining is whether the complainant's reasons for opposing the change were "truly compelling". We do not believe they were. It is important to note that the proposed change in working hours did not directly conflict with claimant's class schedule. If, as claimant testified, his class ended at 11:00 P.M. "at the latest", he still had one hour to travel from Albert Einstein Hospital in The Bronx to Madison Square Garden in Manhattan. At the hearing, claimant testified that even though he had never tried to get to Madison Square Garden by midnight after his class had ended, he knew that it would be "impossible" to do so. Claimant ascribed his ownership of a 1964 Rambler as the reason why such a journey would be impossible, stating "I know what she [the car] can do and what she can't do." It is our opinion that the reasons advanced by claimant for not acceding to the proposed change in working hours were purely personal and, as a matter of law, not good cause for leaving one's employment. As this court has previously stated, "the broad general purpose of the statute is to prevent and reduce unemployment, and to that end it is to be construed

reasonably as an emergency measure. It was never intended to guarantee a claimant employment entailed with each and every condition that a claimant might impose" *(Matter of Krieger [Corsi],* 279 App Div 681). Accordingly, the claimant is found to be disqualified from receiving benefits and the decision of the board is reversed. Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeals Board for further proceedings not inconsistent herewith. Mahoney, P. J., Mikoll and Casey, JJ., concur

Kane and Staley, Jr., JJ., dissent and vote to affirm in the following memorandum by Kane, J. Kane, J. (dissenting). Claimant maintained that he resigned from his position because a proposed change in his work schedule created an actual conflict with his prior educational commitment. The board was thus obliged to ascertain whether his objection to the change had a basis in fact and, if so, to determine further whether it constituted "good cause" for leaving employment. While the asserted conflict could have been found to be more illusory than real, the board obviously credited claimant's testimony—as it had a perfect right to do—and the majority's implied criticism of this purely factual choice is simply unwarranted. Substantial evidence amply supports the finding that the conflict existed; the pertinent issue is whether it amounted to "good cause" for claimant's decision to quit. In our opinion, the board's conclusion that it did is neither arbitrary nor contrary to law. The authorities cited by the majority are readily distinguishable and its reliance on "truly compelling" language is misplaced. In *Matter of Imre (Catherwood)* (27 AD2d 970), the claimant refused to accept a change of hours from an evening to a day shift because she cared for a mentally ill brother. However, we upheld the board's determination that she lacked good cause for leaving employment because it appeared that her assistance was only provided on an occasional basis and could be furnished by others. We affirmed a similar determination in *Matter of Weiss (Catherwood)* (26 AD2d 851) where the change in the claimant's schedule was slight and it was obvious that her family members would not be seriously disrupted by her inability to prepare dinner twice a week. Although we reversed the board in *Matter of Sybell (Catherwood)* (14 AD2d 981), the factual pattern was much the same. There, the claimant's sole dispute with a two- and one-half hour alteration in his working time was that it interfered with his sleeping habits. Since he did not even allege that this minor change would damage his health, the board, as a matter of law, lacked justification for finding he had good cause to leave his position. No precise standard has evolved from these and numerous other cases owing to the widely varying circumstances under which an employee voluntarily resigns. Sometimes, as the foregoing matters illustrate, a claimant's decision to leave rests on trivial or unsupportable reasons which are termed "personal" or not "truly compelling". Yet it is also true that those reasons need not always relate directly to working conditions (see e.g., *Matter of Aronson [Montefiore Hosp. & Med. Center—Levine],* 36 NY2d 891, revg 43 AD2d 628 [apprehension of injury while commuting]; *Matter of Fleischmann [Rochester Gen. Hosp.—Levine],* 43 AD2d 624 [desire to return to hometown]; *Matter of Shaw [General Mut. Ins. Co.—Lubin],* 6 AD2d 354, affd 5 NY2d 1014 [marriage]). In the final analysis, the board must construe the meaning of "good cause" as it applies to the circumstances of a particular case. So long as its decision has a reasonable foundation, we are bound to accept that interpretation *(Matter of Fleischmann, supra,* at p 625). It is worthy of note that this claimant did not quit to initiate a school program (cf. *Matter of Christophe [Levine],* 50 AD2d 705), nor did he resign after the employer

declined to tailor his working hours to his educational plans (cf. *Matter of Manning [Ross]*, 59 AD2d 818; *Matter of Driestadt [Catherwood]*, 29 AD2d 807). Instead, he left when, through no fault of his own, the employer presented him with a unilateral schedule change that he found unacceptable. Claimant may encounter difficulty in remaining eligible for unemployment insurance benefits, but we detect nothing in the present record which, as a matter of law, would disqualify him from such benefits in the first instance. It was reasonable for the board to conclude that he had a good reason for discontinuing employment and we should affirm its decision.