Dorothy Smith, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 5, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

58

*David L. Hill,* for petitioner.

*Charles G. Hasson,* Assistant Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., March 5, 1979:

This is an appeal from an affirmance by the Unemployment Compensation Board of Review of a referee's decision denying benefits on a finding of voluntary termination pursuant to Section 402(b)(1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b)(1).[1] We affirm.

Claimant's last day of work for employer, a social service agency, was October 13, 1976, after approximately five years of service. Claimant last worked as an intake interviewer-receptionist, duties of which included screening and processing prospective clients. Certain events in mid-September 1976, not relevant to our decision, led to an investigation by and the eventual recommendation of the agency's deputy director that claimant be discharged for willful refusal to serve a client.

---

[1] The referee's decision in this case modified a ruling by the Bureau of Employment Security which denied benefits on the basis of Section 402(e) of the Law, 43 P.S. §802(e). Since we affirm the denial on the basis of the referee's finding of voluntary termination we need not consider the evidence and arguments of counsel relating to willful misconduct.

Claimant first learned of her superior's actions on October 12, 1976 in a conversation concerning the incident. Claimant was apprised of the deputy director's findings and his proposed recommendation and was urged by him to resign. Given a day to consider her situation, claimant returned the following day and resigned.

It is now argued by claimant that she did not voluntarily terminate the employment relationship; under the circumstances she had no real option and was, in reality, forced to submit her resignation rather than wait for the inevitable firing.[2] In this regard the referee made the following critical findings:

3. Claimant was advised the Deputy Director was submitting a recommendation for her dismissal which would be reviewed by the Deputy Director[3] for his decision.

4. The claimant was given the option to resign, however, employment was available for her since the recommendation of the Deputy Director was not the determining factor of finality of the dismissal.

5. Claimant elected to resign and not wait for the decision of the Deputy Director.

We are satisfied with the legal conclusion that claimant terminated her employment voluntarily provided the record contains substantial evidence in support of these findings. Careful review of the record

---

[2] Claimant argues alternatively that should we find that her termination was voluntary the same factors she offers to show nonvolition are equally relevant for demonstrating a cause of a necessitous and compelling nature. We agree with claimant on the relative merit of her arguments; neither one finds support in this record.

[3] It is apparent from the record that the referee inadvertently used "deputy director" here instead of simply "director" as was obviously intended.

reveals very substantial support for the referee's findings. The nature of the option presented claimant and the uncertainty of the outcome of any disciplinary process finds substantiation in the following testimony of the deputy director:

REFEREE: Mr. Terio, it's stated that you gave her the option to resign or you would have passed your recommendation on for dismissal. Who would you have passed it on to?

EMP. REP: The Director of the agency.

Q. In the interim that the claimant would not have resigned, would she have continued to work in her functions until there would have been a decision made by the Director of the agency?

A. Yes.

Q. Then are you saying that your recommendation would not necessarily have been final? Or acted upon, or acted upon but you don't know what the outcome would have been of your recommendation, is this a fact?

A. That's true.

Q. Was this explained to the claimant that she could have continued employment while it was being referred to the Director for reconsideration?

A. Yes.

The claimant herself supported the testimony above when she explained that ''Mr. Terio called me in and, on October 12th, and gave me the option that I could resign or I could wait until the memo reached the Director, who may agree with him or turn it down. . . .'' The voluntary character of the decision to resign is also revealed in testimony supplied by claimant:

Q. Are you stating for record the fact that you resigned on his instructions?

A. Not so much on his instructions, also the fact that Mr. Terio stated that if I resigned I could be paid for the rest of the time. And I had just came back from maternity leave and I knew I needed the money.

. . . .

Q. But your actions of October 12th was that you were resigning at that point, rather than wait for the recommendation and possible dismissal by the Director, is this a fact?

A. Yes.

On the basis of the record evidence this Court can only conclude that the termination was voluntary without a cause of a necessitous and compelling nature such as would qualify this claimant for benefits.

Accordingly, we will enter the following

ORDER

AND Now, March 5, 1979, the order of the Unemployment Compensation Board of Review No. B-150111 dated October 12, 1977, denying benefits to Dorothy Smith, is affirmed.