Ann J. DeMelfi, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 1, 1982, before Judges MENCER, BLATT and DOYLE, sitting as a panel of three.

*John M. Kuchka, Kuchka and Irey,* for petitioner.

*William J. Kennedy,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE MENCER, April 1, 1982:

This is an appeal by Ann K. DeMelfi (claimant) from a decision of the Unemployment Compensation Board of Review (Board) affirming a referee's decision which denied her unemployment compensation benefits for voluntarily leaving work without cause of a necessitous and compelling nature.[1] We affirm.

The referee made the following findings of fact which were adopted by the Board:

1. Claimant was last employed by Luzerne Outerwear Manufacturing Corporation and her last day of work was November 23, 1979.

2. Claimant worked for this employer for three and one half years and during the last month of her employment worked as supervisor in the fusing department of the employer's Elysburg plant at a rate of $205.00 per week.

3. On or about October 9, 1979, claimant and the Elysburg plant manager had a dicussion about a new position being offered to the claimant and it was understood that the claimant would have responsibility for the supervision of the piece goods, examining, sponging, decating and storage.

---

[1] Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802.(b)(1).

4. In addition the claimant was informed that when the second shift was started up the claimant would work on the second shift and be responsible for all departments on the second shift.

5. In addition to providing training for the claimant, the employer sent the claimant to North Carolina State University to take a one week's course in textiles.

6. On November 23, 1979, the claimant was interviewed by the vice president about her training at the textile school and a discussion ensued as to the claimant's responsibilities on her new job.

7. The vice president outlined the claimant's duties which included supervision of the sponging, receiving, fusing and examining, and claimant indicated to the vice president that she was being assigned too many responsibilities.

8. Claimant indicated to the vice president that the employe who had been terminated by the employer handled only one of these departments and received $365.00 per week, while she was being paid only $205.00 per week to handle all of the departments, and she told the vice president that she was not happy with this assignment.

9. The vice president responded to the claimant's comments by stating that she would not get a penny more.

10. Claimant did not respond to the vice president's remark about not getting a penny more for her services, but left the plant at that time.

On appeal, the claimant contends that the termination of her employment was involuntary but, even

if the termination be determined voluntary, she had a necessitous and compelling reason to quit her job.

In an appeal from a decision of the Board finding against the party who bore the burden of proof before the Board, this Court is limited to determining whether the Board's findings of fact are consistent with each other and with the Board's conclusions of law and its order and whether the findings can be sustained without a capricious disregard of competent evidence. *Baird v. Unemployment Compensation Board of Review*, 30 Pa. Commonwealth Ct. 118, 121, 372 A.2d 1254, 1257 (1977). Whether an employee voluntarily terminates his or her employment or is discharged is a question of law and properly subject to our review. *Rettan v. Unemployment Compensation Board of Review* 15 Pa. Commonwealth Ct. 287, 290, 325 A.2d 646, 647 (1974).

Initially, we must decide whether claimant's leaving work on November 23, 1979 and not thereafter returning to her job was a voluntary termination of her employment or whether she was, in fact, discharged. The critical testimony relative to the matter is that of the claimant, as follows:

Q. What happened then?
A. He then slammed the phone down and said, 'Are you still under a misunderstanding', and I said, 'Yes, I am.' He said, 'If you're not happy about the situation, just say so.' I said, 'Well, I'm not happy about it.' He said, 'Why are you unhappy?', and I said, 'Well, for one thing, Barry Eikov was paid $360.00 a week, approximately, to run the fusing department, and you want me to run two departments for less than the price of one.' He said, 'You're not getting another cent.' I said, 'I'm not happy about that.' He said, 'Well, then I have

to tell you I have no job for you.' I said, 'Fine.' I left.

and that of the vice president of the employer company, as follows:

Ann insisted that under no circumstance would she do anything else other than be the supervisor of the fusing department unless she received more money. I again went through the whole routine, item by item. Ann again said, 'I feel I am being discriminated against. I should get as much money as Barry Eikov. After all, Barry Eikov didn't do his job and you fired him. The other guy quit.' I said, 'That has nothing to do with Ann DeMelfi. You are in a training situation. You will be trained. You will earn more money.' She again said to me, 'I will not do anything but that.' I said, 'That's not what the agreement was. That's not what you got the $20.00 for and the additional money which you were promised.'' Then I said to her, 'Ann, if you insist upon not doing the job and not living up to your agreement, then there is no job for you.' Ann said, 'Well, then, that's the way it will be.' That's pretty much the outline of what occurred.

We have held that, in order for an employer's language to be interpreted as a discharge, it must possess the immediacy and finality of a "firing." *Lawlor v. Unemployment Compensation Board of Review*, 37 Pa. Commonwealth Ct. 380, 385, 391 A.2d 8, 11 (1978); *Rizzitano v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 59, 62, 377 A.2d 1060, 1061 (1977). The degree of certainty in an employer's language resulting in a termination has often been the difference between those cases in

which the courts have found that an employee's termination was voluntary and those in which the employer's rather than the employee's act was deemed to effect the termination. *Cf. Smith v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 57, 398 A.2d 256 (1979) (where we held an employee's resignation in response to a supervisor's telling her that he would *recommend* to the agency director that she be fired to be a voluntary termination because of the uncertainty that the director would have accepted the supervisor's recommendation); *Thomas v. Unemployment Compensation Board of Review,* 14 Pa. Commonwealth Ct. 398, 322 A.2d 423 (1974) (where we held an employee's failure to return to work after he had been told by his employer that, if he did not work on a certain Sunday, which he did not do, he need not return at all to be a discharge).

Although this is a close case, on a review of the facts here, we find that the Board did not err, as a matter of law, in concluding that claimant voluntarily terminated her employment. Claimant simply left her job because of personal dissatisfaction with the wages of her employment. We do not deem the vice president's language to have been such as to indicate to claimant the immediacy and finality of a "firing," since she was welcome to continue to work at the same pay level that she had been receiving since October 19, 1979.

Since we have determined that the Board did not err, as a matter of law, in concluding that claimant voluntarily terminated her employment, we must now consider whether she had cause of a necessitous and compelling nature for doing so.

By accepting the job as supervisor in the employer's Elysburg plant at a wage rate of $205 per

week, the claimant admitted the initial suitability of the wages and conditions of that employment. To overcome that presumption of suitability, she was required to prove that initial working conditions changed or that, when her employment began, she was deceived as to, or unaware of, conditions later alleged to be onerous. *Kistler v. Unemployment Compensation Board of Review*, 52 Pa. Commonwealth Ct. 465, 416 A.2d 594 (1980).

Although the claimant offered evidence to rebut the presumption, the Board found, by adopting the referee's findings of fact, that claimant understood and accepted the wages and conditions of her employment as a supervisor at the employer's Elysburg plant. We do not find that the Board capriciously disregarded competent evidence, and therefore the findings of fact that claimant understood and accepted the wages and conditions of her employment as a supervisor are sustainable here. The presumption of initial suitability of the wages and conditions of employment has not been overcome in the instant case.

The Board determined that the claimant quit because of personal dissatisfaction with her wages. It is well settled that mere discontent with wages, hours, and working conditions is not an adequate cause for terminating one's employment so as to justify an award of unemployment compensation benefits. *Remington v. Unemployment Compensation Board of Review*, 36 Pa. Commonwealth Ct. 380, 387 A.2d 1343 (1978).

ORDER

AND Now, this 1st day of April, 1982, the order of the Unemployment Compensation Board of Review,

584

dated March 31, 1980, denying unemployment compensation benefits to Ann K. DeMelfi (Decision No. B-182695), is hereby affirmed.

