Dorothy M. KILMARTIN

v.

MAINE EMPLOYMENT SECURITY
COMMISSION.

Supreme Judicial Court of Maine.

Argued May 6, 1982.

Decided June 9, 1982.

Thomas P. Downing, Jr. (orally), Portland, for plaintiff.

Peter J. Brann (orally), Susan P. Herman, Asst. Attys. Gen., Augusta, for defendant.

Before McKUSICK, C. J., and NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

ROBERTS, Justice.

Dorothy Kilmartin appeals from a judgment of the Superior Court, Cumberland County, which affirmed a decision of the Maine Employment Security Commission. The Commission concluded that Kilmartin had left her job voluntarily without good cause attributable to her employment and denied Kilmartin unemployment benefits. *See* 26 M.R.S.A. § 1193. Because the *sole* issue raised before the Superior Court was whether Kilmartin had "good cause" to leave her employment and because the Commission was warranted in finding that Kilmartin had failed to establish good cause, we must affirm the judgment of the Superior Court.

Kilmartin was the only witness to testify before the Employment Security Commission.[1] She related that her employment with American Frozen Foods, Inc. began in

---

1. Although notified of an opportunity to be heard, no representative of Kilmartin's employer appeared for a scheduled hearing in Connecticut.

November of 1979. She sold freezers, microwave ovens, and frozen food for the company on a commission basis. In May of 1980 Kilmartin transferred to the "reorder" department. In that department Kilmartin traveled throughout the state visiting established accounts in order to sell them orders for frozen foods. Although Kilmartin made less money working for the reorder department, she testified that she was told "[i]t would be eventually a better opportunity once they had built the business up." In May 1980, when she started in the reorder department, Kilmartin was required to attend a training session in Fairfield, Connecticut. To attend this meeting she left home at 3:00 a. m. and drove to Connecticut. After the meeting she was so tired that the company allowed her to spend the night in a motel it owned in Fairfield.

In the middle to end of June 1980, Kilmartin was informed that "all sales personnel are due in Connecticut July 18th. No excuse is acceptable. None. There are no excuses. This is not optional. All must attend." On July 17, the day before the meeting, Kilmartin called her supervisor and said she could not attend because she could not afford the expense of traveling to Connecticut. The Supervisor told her the meeting wasn't optional; Kilmartin said again that she couldn't afford the trip. The supervisor told her "this is where we part company then." According to Kilmartin, "that was the way it ended."

The specific evidence, as it relates to the issues Kilmartin now attempts to raise before this Court, was somewhat inconsistent. Kilmartin, in her application for determina-

tion of insured status, initially refused to check any of the five boxes the Commission provides on its form for reasons for separation from work. These five categories include (1) lack of work, (2) left voluntarily, (3) discharged, (4) labor dispute and (5) illness. Rather, Kilmartin wrote "over" on her application in an apparent attempt to explain the reason she no longer worked for American Frozen Foods. Unfortunately, the record before the Superior Court, and before this Court does not include this apparent explanation. When Kilmartin appealed the deputy's decision to the Appeal Tribunal she objected to the deputy's decision on the ground that "I did not leave voluntarily." Moreover, when testifying at the Appeal Tribunal level Kilmartin stated "I don't think I left." Notwithstanding this testimony, the record indicates that the Appeal Tribunal and the Commission, perhaps as the result of a mechanistic categorization of issues,[2] did not consider whether Kilmartin was discharged from her employment. Rather, the opinions and decisions at the various administrative levels suggest a predisposition to consider Kilmartin's separation as a "voluntary quit." The only issue explored by the Appeal Tribunal was whether Kilmartin had "good cause" to quit within the meaning of 26 M.R.S.A. § 1193(1)(A). The Commission had no further hearing thereafter.[3]

Kilmartin, when she appealed the Commission decision to the Superior Court, did not raise as an issue before that court the apparent failure of the Commission to at least consider whether the events leading

2. *See* Employment Security Commission Form, Me., A–1 (rev. 4–79); Me. A–2 (rev. 2–79).

3. The Legislature clearly anticipated that the Commission would promulgate regulations to govern the procedure used to determine claims for benefits and to govern appeals from such determinations. *See* 26 M.R.S.A. §§ 1194(3) & (6). The Commission, however, has apparently not yet prescribed any such regulations. At oral argument we are advised that the Commission considers the examiner charged with conducting the Appeal Tribunal hearing a neutral arbiter. We are also advised of the Commission's belief that it is "incumbent upon the person taking the appeal to develop [a rec-

ord]." This court has recently reemphasized the Commission's "duty to create a record that will reflect a rational exercise of administrative judgment." *Roy v. Maine Employment Security Commission*, Me., 440 A.2d 1066, 1069 (1982), *citing Tobin v. Maine Employment Security Commission*, Me., 420 A.2d 222, 226 (1980). If the Deputy who rendered the initial decision is not present at the Appeal Tribunal hearing and if claimants are not represented by counsel at that stage of the appeal process, such a proceeding is unlikely to generate a complete record suitable for subsequent commission decision and judicial review.

**414**

to her separation from employment constituted a voluntary quit under 26 M.R.S.A. § 1193(1) or a discharge under 26 M.R.S.A. § 1193(2). Rather, she argued *only* that she had good cause to leave her employment. Accordingly, although Kilmartin now argues that she didn't quit but was fired, her failure to raise the issue in the court below precludes this court from reaching the merits of this argument. *See In re Estate of Thompson*, Me., 414 A.2d 881, 890 (1980); *Laurel Bank and Trust Co. v. Burns*, Me., 398 A.2d 41, 44 (1979).

The only issue we confront in this appeal, therefore, is whether Kilmartin did or did not have "good cause" within the meaning of section 1193(1)(A) to leave her job. Kilmartin bore the burden below to show that good cause did, in fact, exist. *See Therrien v. Maine Employment Security Commission*, Me., 370 A.2d 1385, 1391 (1977). Good cause must be "measured against a standard of reasonableness under all the circumstances." *See id.* at 1389. Kilmartin suggests the expense of the required trip to Connecticut and the reduction in wages suffered as a result of her transfer should constitute good cause within the meaning of section 1193(1)(A). Although the claimant contended that this economic impact should constitute good cause, given the record before it, the Commission was justified in concluding good cause did not here exist. *See Shone v. Maine Employment Security Commission*, Me., 441 A.2d 282 (1982); *Smith v. Maine Employment Security Commission*, Me., 440 A.2d 1037 (1982). Accordingly, we must affirm the judgment of the Superior Court.[4]

The entry is:

Judgment affirmed.

All concurring.

---

4. Although the procedural circumstances of this case preclude us from reaching the question of whether Kilmartin here quit or was discharged, we are distressed by the failure of either the Appeal Tribunal or the Commission, at the very least, to *consider* the issue. Until an aggrieved party invokes the provisions of the Administrative Procedure Act by filing a complaint in Superior Court, the Employment Security Commission functions as a factfinding tribunal, an impartial referee and as the administrator of a *remedial* statute which must be liberally construed. *See Toothaker v. Maine Employment Security Commission*, Me., 217 A.2d 203, 210 (1966).