Sam PROUT

v.

## MAINE EMPLOYMENT SECURITY COMMISSION [1].

Supreme Judicial Court of Maine.

Argued March 17, 1983.

Decided July 22, 1983.

Downeast Law Offices, P.A., Michael A. Bell (orally), Lewiston, for plaintiff.

Christine Foster (orally), Susan P. Herman, Peter H. Stewart, Asst. Attys. Gen., Dept. of Manpower Affairs, Employment Sec. Com'n, Augusta, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER,[*] VIOLETTE and WATHEN, JJ.

GODFREY, Justice.

Plaintiff Sam Prout appeals from a judgment of the Superior Court, Androscoggin County, affirming a decision of the Employment Security Commission that denied him benefits on the ground that he left his employment "voluntarily without good cause attributable to such employment." 26 M.R.S.A. § 1193(1)(A) (Supp.1982).[2] We affirm the judgment.

Plaintiff began working as a general clerk for K-Mart Corporation at its store located in Auburn, Maine, on December 8, 1980. When he was hired, Prout was made aware that his employer had a policy prohibiting relatives from working in the same store. While working at the store, he became romantically involved with a co-worker named Nancy. Nancy and Prout eventually made plans to marry. Recognizing that their plans would conflict with the employer's policy, Prout went to his personnel manager and informed her of his and Nancy's plans. At that time, the personnel manager only reiterated to Prout the company policy. Sometime after that meeting, Prout and Nancy discussed the situation and decided, in view of the prospect that one of them would be discharged, that Prout should leave the employment because Nancy had worked at K-Mart longer and was making more money. Prout submitted his resignation, and his employment terminated on November 4, 1981, ten days before the wedding.

---

[1.] We have deleted K-Mart Corporation as a party defendant because it never made an appearance in Superior Court.

[*] Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

[2.] 26 M.R.S.A. § 1193(1)(A) provides in relevant part:

> An individual shall be disqualified for benefits ... [f]or the week in which he left his regular employment voluntarily without good cause attributable to such employment ... and disqualification shall continue until claimant has earned 4 times his weekly benefit amount in employment by an employer ....

Prout applied for unemployment benefits. His claim was denied by a deputy of the Commission on the ground that he voluntarily left the employment without good cause attributable to such employment. The Appeal Tribunal of the Commission, and later the Commission itself, denied Prout's claim on the same ground. Prout filed suit in Superior Court for review of the Commission's decision under 26 M.R.S.A. § 1194(8) (Supp.1982) and M.R.Civ.P. 80B. The court affirmed the Commission's decision on the ground that the decision was supported by substantial evidence. It rejected Prout's argument that denial of benefits interfered with his constitutionally protected right to marry.[3]

The evidence adequately supports the Commission's finding that Prout left his employment voluntarily. This is not a case where the employee has resigned to anticipate an imminent discharge. *Cf. School District No. 20 v. Commissioner of Labor,* 208 Neb. 663, 305 N.W.2d 367 (1981) (school superintendent resigned because a majority of school board members told him to his face they intended not to reelect him; *held,* not a voluntary resignation); *Gale v. Department of Employment Security,* 136 Vt. 75, 385 A.2d 1073 (1978) (bookkeeper who worked at home forty hours a week resigned on being told by employer she could not meet the required hours and "would have to be terminated;" *held,* a "discharge," not a voluntary quit). Not only was Prout's discharge not imminent in time, but there was no certainty that it would ever occur even if the company policy were to be enforced: it was a matter of conjecture whether the company would discharge him, rather than Nancy, after their marriage. *See Rivera v. Catherwood,* 29 A.D.2d 582, 285 N.Y.S.2d 393 (1967) (after employer's announcement that 1 of 3 workers would be laid off, claimant opted to be the one); *Scott v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review,* 63 Pa.Cmwlth. 346, 437 A.2d 1304 (1981) (claimant quit in face of investigation that might lead to dismissal).

The Commission was justified also in finding that Prout's leaving his job was without good cause attributable to the employment. Prout argues that because of the company rule against related employees, he had good cause to quit and that the cause was attributable to the employment. He would have us hold that the company rule created a situation analogous to a "working condition" injurious to health or safety that, in effect, compels the employee to quit. *See Therrien v. Maine Employment Security Commission,* 370 A.2d 1385 (Me.1977). We are unwilling to follow such an analogy in this case. Faced with potential application of the company rule, Prout left so that his future wife could retain her job. That reason for leaving resembles far more closely reasons that the courts have characterized as merely "personal" in unemployment compensation cases. *See, e.g., Consiglio v. Administrator, Unemployment Compensation Act,* 137 Conn. 693, 81 A.2d 351 (1951) (claimant quit to take better-paying job); *Kilmartin v. Maine Employment Security Commission,* 446 A.2d 412 (Me. 1982) (claimant quit rather than comply with employer's demand that she attend out-of-state meeting); *Carter v. Maine Employment Security Commission,* 356 A.2d 731 (Me.1976) (claimant quit to accompany her husband to a distant city where he took new employment);[4] *Toothaker v. Maine Employment Security Commission,* 217 A.2d 203 (Me.1966) (claimant quit because of long commuting distance to and from work); *Mississippi Employment Security Commission v. Fortenberry,* 193 So.2d 142 (Miss.1966) (claimant quit to avoid apologizing to her supervisor as ordered); *DeMelfi*

---

**3.** The United States Supreme Court has held that the right to marry is a fundamental right protected by the United States Constitution. *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

**4.** The rule in *Carter* has since been modified by legislation. P.L.1977, ch. 472, § 1, amending section 1193.

*v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* 65 Pa.Cmwlth. 577, 442 A.2d 1249 (1982) (claimant quit because of dissatisfaction with compensation).

On the facts of this case we need not decide whether denial of benefits interfered impermissibly with Prout's protected right to marry. Prout quit before the company made any decision to enforce its no-relatives policy against him. The mere reiteration of the policy by the personnel manager to Prout does not amount to a decision by the company to enforce the policy against Prout. At the time he resigned, nothing prevented Prout from staying on the job. If after his marriage the company had sought to apply the rule to dismiss Prout, the issue he seeks to raise might have been generated. It does not arise in this case.

The entry is:

Judgment affirmed.

All concurring.