### Peter HENRY

v.

### MAINE UNEMPLOYMENT INSURANCE COMMISSION, et al.

Supreme Judicial Court of Maine.

Argued Nov. 20, 1986.

Decided Dec. 17, 1986.

Patricia Ender (orally), Pine Tree Legal Assistance, Inc., Lewiston, for plaintiff.

James Tierney, Atty. Gen., Mary Lou Dyer (orally), Asst. Atty. Gen., Augusta, for Maine Unemployment Ins. Comm.

Drummond, Woodsum, Plimpton & MacMahon, Bruce W. Smith (orally), Harry R. Pringle, Portland, for M.S.A.D. No. 36.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

WATHEN, Justice.

Plaintiff Peter Henry appeals from a judgment of the Superior Court (Kennebec County) affirming a decision by the Maine Unemployment Insurance Commission denying him unemployment insurance benefits for the reason that he left regular employment voluntarily and without good cause attributable to such employment within the meaning of 26 M.R.S.A. § 1193(1)(A) (Pamph.1985). On appeal plaintiff argues that he did not voluntarily quit, and in the alternative that he quit for good cause attributable to his employment. We disagree and deny the appeal.

The facts may be summarized as follows: Peter Henry, a 27 year old mentally handicapped man, worked as a school custodian at M.S.A.D. No. 36 from October 1979 to August 1983. During the school year, Henry worked from 9:30 p.m. to 6:00 a.m. because he preferred to work alone. During summers prior to 1983 Henry worked during the day with other custodians. During the summer of 1983 Henry was assigned to work the 3:00 p.m. to 11:30 p.m. shift alone. For the first hour and a half of this shift Henry's supervisor was present and explained his tasks to him for the evening.

Although Henry's performance had been satisfactory in the past, during the summer of 1983 his performance deteriorated. Henry was having difficulty in stripping wax from the floors and his supervisor reviewed the procedure with him. Although Henry had the physical and mental capacity to perform this task, he ignored his supervisor's instructions. Twice during the summer Henry left his assigned building unattended. After the first incident Henry's supervisor instructed him not to repeat this. Although Henry understood, he neglected to follow instructions. Henry never complained of harassment or sought medical help for any anxiety he might have experienced.

Henry's supervisor complained to his superior about Henry's job performance several times during the summer. Nevertheless, his supervisor did not reprimand or threaten to fire Henry. On August 17, 1983, Henry had a meeting with the school

superintendent about his job performance during the summer. The superintendent reprimanded Henry and told him that further problems would result in his dismissal.

The following week Henry reported a student driving across the school lawn in violation of school policy. A meeting was scheduled with the student, his parents, Henry and the principal. On the morning of the meeting, Henry told his supervisor that he did not want to attend. An hour later Henry quit, informing his supervisor that he "could not take it any more" and that he had a job in another school district. Henry's mother tried to contact the superintendent that evening attempting to rescind the resignation. The following day Henry met with the superintendent and asked for his job back. Henry's parents also met with the superintendent and asked him to reinstate Henry. The superintendent refused their request.

Henry applied for unemployment benefits but the Maine Unemployment Insurance Commission determined that he was not eligible within the meaning of 26 M.R. S.A. § 1193(1)(A) (Pamph.1985), because he left regular employment voluntarily and without good cause. Henry appealed this finding to the Superior Court. The Superior Court vacated the Commission's decision and remanded the case to the Commission for findings on issues relating to any mental handicap and any efforts that may have been made to reasonably accommodate any handicap. On remand, the Commission reviewed two psychological evaluations of Henry and concluded that he had a "limited learning disability" and was of "borderline intellectual intelligence." The Commission found that Henry had "no pervasive thought disorders or emotional disability." The Commission denied Henry's claim concluding that his job performance was not affected by any physical or mental handicap and that he voluntarily left the employ of M.S.A.D. No. 36 because of subjective

inward pressures that were not reasonable under the circumstances. Henry again appealed and the Superior Court denied his appeal.

## I.

■ On appeal, Henry contends that he did not have the mental capacity to voluntarily quit and that his employer's refusal to accept the retraction of his resignation changed the classification of his departure from voluntary to involuntary. The Commission determined that Henry had the mental capacity to quit his job voluntarily. It found that Henry's handicap was limited to being a slow learner. In particular he had problems understanding unfamiliar verbal and written material. It also concluded, based on two psychological evaluations of Henry, that he had no pervasive thought disorder or emotional disability. The evidence does not compel the conclusion that Henry was unaware of what he was doing. On the contrary, the evidence indicates that Henry was capable of terminating his employment voluntarily.

The Commission correctly determined that Henry voluntarily left his employment with M.S.A.D. No. 36. In Maine, an employee who voluntarily resigns and then unsuccessfully attempts to withdraw his resignation, leaves his employment voluntarily. *Guy Gannett Pub. Co. v. Maine Employ. Sec. Comm'n.*, 317 A.2d 183 (Me. 1974). Henry's attempted retraction does not change the nature of his departure, he left his job of his own accord.

## II.

■ Henry contends that his separation from employment was for good cause attributable to his employment within the meaning of 26 M.R.S.A. § 1193(1)(A) (Pamph.1985).[1] He claims that he resigned because he faced what he reasonably and objectively believed to be imminent dis-

---

1. 26 M.R.S.A. § 1193(1)(A) (Pamph.1985) states in relevant part:

    § 1193. **Disqualification**

    An individual shall be disqualified for benefits:

1. **Voluntarily leaves work.**

    **A.** For the week in which he left his regular employment voluntarily without good cause attributable to such employment ...

charge. We conclude that the Commission properly applied an objective standard and that competent evidence supports its determination that Henry did not have good cause to leave his job. *See Merrow v. Maine Unemploy. Ins. Comm'n.*, 495 A.2d 1197, 1200 (Me.1985).

The claimant has the burden of proving that he resigned with good cause attributable to his employment. Good cause must be measured against an objective standard of reasonableness under all the circumstances. *Spear v. Maine Unemploy. Ins. Comm'n.*, 505 A.2d 82, 84 (Me.1986). Good cause exists when the pressure of real, substantial and reasonable circumstances compels the employee to leave. The employee must be forced to quit because of outward pressures. *Toothaker v. Maine Employ. Sec. Comm'n.*, 217 A.2d 203, 207 (Me.1966).

Henry did not prove that he had good cause to leave his job. Under Maine law, belief that discharge is imminent will only constitute good cause if discharge is in fact imminent. *See Prout v. Maine Employ. Sec. Comm'n.*, 462 A.2d 1177 (Me.1983). Henry had no reason to believe that his dismissal was imminent. The evidence showed that his supervisor was consistently patient with him and told him that he could take more time to complete his projects correctly. Furthermore, two weeks from the day he quit he would have returned to his old schedule where he had performed satisfactorily. The Commission found that Henry left the employ of M.S. A.D. No. 36 because of subjective inward pressures that were not reasonable under the circumstances. We find that the evidence supports this conclusion.

The entry must be:

Judgment affirmed.

All concurring.