STATE OF MAINE
CUMBERLAND, ss.



2009 SEP -8 A 8: 02

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: AP-08-027

BRENDA HOPKINS,

    Petitioner

    v.

**ORDER**

UNEMPLOYMENT INSURANCE
COMMISSION,

    Respondent

This case comes before the Court on Petitioner Brenda Hopkins' 80C appeal from a decision of the Maine Unemployment Insurance Commission (herein "the Commission").

## BACKGROUND

The facts contained in the record before the Commission are as follows: Petitioner Brenda Hopkins (herein "Petitioner") worked for Maine Employers' Mutual Insurance Company (herein "MEMIC") from January 2003 until May 21, 2008. In the summer of 2007, Petitioner took a leave of absence due to depression brought on by her dissatisfaction with her employment and concerns relating to her family life. Petitioner returned to work in September 2007.

On May 21, 2008, Petitioner sent an email to her direct supervisor, Deborah Marshall, giving her two weeks' notice of her resignation. Petitioner wrote:

> I've tried really hard to put up with all that goes on in this company. The management is unacceptable. I have been brought up to be an honest person, I find this company to be very dishonest. I feel if I stay any longer, it would only make matters worse. My last day will be 6/4/08.

1

Upon receiving this email, human resources representative Deborah Comich invited Petitioner to her office for an exit interview.[1] It was at this point that Petitioner went into more detail about her problems with the company's management. At this exit interview, Petitioner informed Ms. Comich that she had given her notice because of the constant "chattering" of other employees near Petitioner's work station, other employees' taking excessive breaks, and the generally lax manner in which the company was managed.

In addition to these complaints, Petitioner also claims that she left her employment because she did not agree with certain MEMIC policies. Specifically, she did not agree with her employer's policy of holding back premium reimbursements and credit endorsements. For example, if MEMIC received a reimbursement mid-month, rather than sending that reimbursement to the customer immediately, it would hold off until the beginning of the following month. Petitioner was also uncomfortable with the fact that clients were never informed that there was a charge for canceling insurance policies.

At the time she ended her employment, while Petitioner believed that all of these practices were dishonest, she did not know of any specific law, regulation, company policy, or insurance policy prohibiting them. Further, while she knew "in her heart" that these practices were dishonest, at no point prior to leaving her employment did she file a complaint with Maine's Bureau of Insurance or any other government agency.

_____

[1] When a person working in either the underwriting or accounting departments of the company gave notice, MEMIC's practice was to give the employee two weeks' worth of pay immediately, rather than allow that person to work through the notice period.

2

Shortly after leaving her job at MEMIC, Petitioner applied for unemployment benefits. A deputy of the Maine Bureau of Employment Security found that, as Petitioner left her job without good cause attributable to her employment, she was not entitled to receive unemployment benefits. After a hearing, a hearing officer with the Department of Labor affirmed the deputy's decision. On July 1, 2008, after holding another hearing on this matter, the Maine Unemployment Insurance Commission affirmed all prior decisions and held that Petitioner did not have just cause to end her employment.

In its decision, the Commission stated that "[w]ith respect to the issues with her co-workers and with what [Petitioner] perceived to be poor company management, [Petitioner] did not address her qualms with the human resources personnel until her exit interview, after she had already given her two weeks notice." Further, while the Commission recognized that Petitioner had a personal objection to certain of her company's policies, it noted that Petitioner "could not identify any insurance laws that were violated by the employer's business practices. [Thus,] [i]t was unreasonable for the claimant to quit her job without discussing her concerns with management or determining for herself that the employer's practices were, in fact, unethical or illegal by industry standards." Petitioner then filed this timely appeal.

DISCUSSION

The Commission's decision will stand provided it is not based on a clear error of law and is otherwise supported by substantial evidence on the whole record. 5 M.R.S.A. §§ 11007(4)(C)(4)-(5); *see also* M.R. Civ. P. 80C(a). If there is any competent evidence on the record to support the Commission's factual findings

3

and application of the law to those findings, the decision will be upheld. *Sprague Electric Co. v. Maine Unemployment Insurance Commission*, 544 A.2d 728, 731 (Me. 1988); *Gerber Dental Ins. Co. v. Maine Unemployment Insurance Commission*, 531 A.2d 1262, 1263 (Me. 1987). Moreover, this Court will not substitute its judgment for that of the Commission on the basis of conflicting evidence or questions of witness' credibility. *Bean v. Maine Unemployment Insurance Commission*, 485 A.2d 630, 634 (Me. 1984); *Cotton v. Maine Employment Security Commission*, 431 A.2d 637, 640 (Me. 1981).

Under 26 M.R.S.A. § 1193(1)(A),

An individual shall be disqualified for benefits:

1. Voluntarily leaves work.
   A. For the week in which the claimant left regular employment voluntarily without good cause attributable to that employment. The disqualification continues until the claimant has earned 4 times the claimant's weekly benefit amount in employment by an employer.

26 M.R.S.A. § 1193 (1)(A).

Petitioner had the burden of proving to the Commission that she left her job with "good cause attributable to [her] employment." *Merrow v. Maine Unemployment Insurance Commission*, 495 A.2d 1197, 1201 (Me. 1985); *Kilmartin v. Maine Employment Security Commission*, 446 A.2d 412, 414 (Me. 1982). Good cause for voluntarily resigning exists when "the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances *compel* the decision to leave employment." *Merrow*, 495 A.2d at 1201 n.2 (quoting *Toothaker v. Maine Employment Security Commission*, 217 A.2d 203, 207 (Me. 1966) (emphasis in original)). Good cause must be measured against a standard of reasonableness under all the circumstances. *Merrow*, 495 A.2d at 1201. Thus an objective test is used to determine whether an employee had good cause to leave her

4

employment. *See Therrien v. Maine Employment Security Commission*, 370 A.2d 1385, 1389 (Me. 1977). Further, the Court has also held that in order "for changed circumstances of employment causing deterioration to constitute good cause, the employer must be given the opportunity to change the offensive conditions. Hence, the employee must reasonably make known [her] dissatisfaction to the employer." *Merrow*, 495 A.2d at 1207.

From a review of the record on appeal, it is apparent that the Commission's decision was consistent with both statutory and case law and was supported by competent record evidence. As such, this Court finds that, based on the record and applicable law, the Commission did not err in finding that Petitioner left her employment voluntarily without good cause.

**The entry is:**

Petitioner's 80C appeal is DENIED and the decision of the Commission is AFFIRMED.

DATE: September 4, 2009

Roland A. Cole
Justice, Superior Court

Date Filed __09-16-08__     CUMBERLAND     Docket No. __AP-08-27__

County

Action _____ 80C APPEAL _____

BRENDA HOPKINS     vs.     UNEMPLOYMENT INSURANCE COMMISSION

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PRO SE<br>399 ALFRED ST, APT G<br>BIDDEFORD, ME 04005 | ELIZABETH WYMAN AAG<br>6 STATE HOUSE STATION<br>AUGUSTA ME 04333 |

Date of
Entry